Filed 9/18/13 (unmodified version attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| FRANCISCO ROLDAN et al., | |
| Plaintiffs and Appellants, | G047306 |
| v. | (Super. Ct. Nos. 30-2009-00303966, 30-2010-00417796, 30-2010-00417811) |
| CALLAHAN & BLAINE et al., | |
| Defendants and Respondents. | ORDER MODIFYING OPINION; NO CHANGE IN JUDGMENT |

It is hereby ordered that the opinion filed herein on August 26, 2013, be modified as follows:

1. On page 2, third sentence of the second full paragraph, should be changed so the sentence reads:

We reverse and remand to the trial court with directions to: (1) estimate the reasonable costs of arbitration previously ordered; (2) determine whether any of these plaintiffs are financially able to pay their anticipated share of that costs; and (3) if any of them are unable to do so, issue an order specifying that Callahan has the option of either

paying that plaintiff's share of the costs of arbitration, or waiving its right to arbitrate that plaintiff's case and allowing the case to proceed in court.

This modification does not effect a change in the judgment.


RYLAARSDAM, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.

Filed 8/26/13 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| FRANCISCO ROLDAN et al., | |
| Plaintiffs and Appellants, | G047306 |
| v. | (Super. Ct. Nos. 30-2009-00303966, 30-2010-00417796, 30-2010-00417811) |
| CALLAHAN & BLAINE et al., | |
| Defendants and Respondents. | O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Ronald L. Bauer, Judge. Reversed and remanded with directions.

Law Offices of Steven R. Young and Jim P. Mahacek for Plaintiffs and Appellants.

Waxler Carner Brodsky, Andrew J. Waxler and Danielle R. Sokol for Defendants and Respondents.

\* \* \*

Plaintiffs settled the underlying case reluctantly, and only after their attorneys – including defendants herein – unsuccessfully attempted to have them declared legally incompetent so that a guardian ad litem could be appointed to cooperate with the attorneys' efforts. Plaintiffs subsequently elected to file suit against the attorneys based on that attempt, on the alleged inadequacy of the settlement, and on other conduct. Defendants Callahan and Blaine, Edward Susolik and Lee Burrows (collectively "Callahan") successfully moved to compel arbitration of that suit, based on the arbitration provision contained in the firm's retainer agreement, and we declined to review that decision when plaintiffs petitioned this court for a writ of mandate.

Plaintiffs, however, contend they are indigent and cannot afford to share in the substantial expense of the arbitration forum, and thus they filed a motion in the trial court seeking an order compelling Callahan to advance the entire upfront cost of the arbitration forum they have insisted upon utilizing. That motion was denied and plaintiffs contest that denial in this appeal. We reverse and remand to the trial court with directions to: (1) calculate the reasonable cost of the arbitration previously ordered; (2) determine whether any of these plaintiffs are financially able to pay their anticipated share of that cost; and (3) if any of them are unable to do so, issue an order specifying that Callahan has the option of either paying that plaintiff's share of the cost of the arbitration, or waiving its right to arbitrate that plaintiff's case and allowing the case to proceed in court. If the trial court determines that one or more, but not all, of the plaintiffs are unable to pay their anticipated share of the arbitration cost, and Callahan elects to waive its right to arbitrate those plaintiffs' claims rather than pay their share of the arbitration cost, then the court is directed to further consider whether the policy of avoiding conflicting rulings on common issues of law or fact supports an order requiring all of the plaintiffs' claims to be consolidated in the superior court.

FACTS

Joan and Francisco Roldan, Gail Chudacoff and Jenni Mendoza (plaintiffs) were among a group of plaintiffs in the underlying litigation arising out of toxic mold contamination in the apartment building where they resided. All of these plaintiffs were elderly, of limited financial means, and relied on Section 8 housing subsidies to pay for their apartments. (Section 8 is a federal program providing financial assistance to low-income tenants and is codified as 42 U.S.C. § 1437f.) Plaintiffs were represented in the underlying case by attorney Richard Quintilone, but prior to trial, he informed them by letter that he had associated Callahan as co-counsel in their case, explaining that "[Callahan's] reputation in solving complex litigation cases is unsurpassed and their partnership will serve as an invaluable opportunity to help bring forth meaningful settlement discussions . . . as well as assist in the substantial upcoming expert costs." He then pointed out the clients would find Callahan's retainer agreement enclosed "for your signature and prompt return," and assured them the association would "not affect any recovery on your behalf, they will merely assist in advancing the substantial upcoming costs of your litigation." Quintilone's letter did not otherwise explain or discuss any aspect of Callahan's retainer agreement, which included an arbitration provision on page 8, and did not advise his clients to read it.

The Callahan arbitration provision states, in its entirety, the following: "Any controversy between the parties regarding the construction or application of this Agreement, and all claims for damages or other relief based upon or pertaining to this Agreement or its breach, including without limitation disputes concerning fees, costs, malpractice and professional misconduct, or any combination thereof, shall be submitted to binding arbitration without right of appeal (except as specifically provided by law) upon the written request of either party, with all proceedings conducted pursuant to the California Arbitration Act, California Code of Civil Procedure sections 1280 et[] seq.,

3

before one neutral arbitrator. The arbitrator must be either an attorney licensed in the State of California with at least fifteen (15) years of litigation experience or a retired judge and in either event affiliated with the Judicate West facility located in Orange County, California. In the event the parties for whatever reason fail to reach an agreement on a designated arbitrator within the five day period immediately following mutual acknowledgment to arbitrate or the entry of a [c]ourt order compelling arbitration, whichever first occurs, the selection may be made immediately thereafter by the Judicate West administrative office which shall unilaterally select a panel member with a minimum of 15 years litigation experience or shall be a retired judge. Discovery under the arbitrator's own rules shall not apply unless both parties so agree in writing. In any such arbitration, the arbitrator must award the prevailing party his arbitration fees. The arbitrator is without discretion and must award these fees. Should the arbitrator fail to do so, the Orange County Superior Court is empowered to review both the facts and the law as to the arbitrator's denial of arbitration fees to the prevailing party. For the purposes of this section, prevailing party is the party which makes positive net recovery in any amount." (Bold omitted.)

This arbitration provision is, to say the least, awkwardly incorporated into the nine page retainer agreement. The other provisions of the agreement are contained on pages one through seven, and conclude at the top of page seven which is otherwise blank. Each of those seven pages includes a space for the client to initial. The arbitration provision is contained on page eight, followed only by a space for the signature of a Callahan representative. The client then signs the agreement on page nine, which is devoid of any substance. Thus, the arbitration provision is literally the only page of the agreement *neither initialed nor signed by the client*.

Apparently the Roldans and Chudacoff, together, met with Burrows, an associate attorney employed by Callahan, to sign the retainer agreements on September 14, 2007. However, Burrows did not sign page eight on behalf of the firm at that time;

4

instead, it was not until four days later, on September 18, that Susolik signed the arbitration provisions on behalf of the firm.

Although Burrows declared under penalty of perjury that the arbitration provision was included within the retainer agreements provided to each of the clients for signature, he made no claim that he explained the provision or its effect to them. Instead, he simply declares that he offered the clients the opportunity to ask him any questions about the agreement, but they "did not ask any questions about the arbitration provision or raise any concerns about [it]."

Apparently, Mendoza signed her retainer agreement without even meeting with Burrows; her signature on the document is not dated, and she did not initial any of the pages. Again, Susolik signed the page containing Mendoza's arbitration provision on September 18, 2007.

According to the complaints subsequently filed by plaintiffs, after Quintilone associated with Callahan in the underlying case, these attorneys began pressuring plaintiffs to settle the case on unfavorable terms. When plaintiffs resisted, the attorneys (1) sought to withdraw from the representation, and (2) filed motions to have guardians ad litem appointed to take control of plaintiffs' affairs on the ground of their "inability to assist counsel with the prosecution of the case." Plaintiffs were forced to incur the expense of an independent attorney and a psychiatrist to assist them in their successful defense of the motion for appointment of the guardians.

Plaintiffs ultimately agreed to settle the underlying case. The Roldans received $100,000 in the settlement, Chudacoff received $107,300, and Mendoza received $85,000. All of them allege, however, that these sums were "far less than the real value of the case," and further that the attorneys failed to promptly disburse their settlement proceeds, and refused to give them a copy of their file in the underlying case when requested. Based upon the attorneys' alleged misconduct, plaintiffs' complaints

stated causes of action for financial elder abuse, conversion, and breach of fiduciary duty, among others.

Both Callahan and Quintilone separately petitioned the court for orders compelling arbitration of plaintiffs' complaints. In their oppositions to these petitions, plaintiffs made numerous arguments, including the assertion they were unable to afford the cost of arbitration. The trial court nonetheless granted Callahan's petition in each case, although it denied Quintilone's on the basis his retainer agreement contained no binding arbitration agreement.

The court later ordered the three cases consolidated into a single arbitration against Callahan and stayed the non-arbitrable claims against Quintilone pending completion of the Callahan arbitration. Because an order compelling arbitration is not appealable, plaintiffs each petitioned this court for writs of mandate overturning the court's orders enforcing Callahan's arbitration provision. We denied those petitions. (*Roldan v. Superior Court,* G043953; *Chudacoff v. Superior Court*, G044896; *Mendoza v. Superior Court*, G044988.) Quintilone also appealed the order denying his petition to compel arbitration, and that order was affirmed by this court in an unpublished opinion. (*Roldan v. Quintilone* (Aug. 31, 2011, G044097 [nonpub.opn.].)

In May 2012, plaintiffs filed a joint motion in the superior court, seeking an order decreeing they are not required to pay any portion of the "up front" cost of the arbitration between themselves and Callahan. They claimed it was undisputed they were indigent, and argued that circumstances had changed since the court issued the orders compelling them to arbitrate, as the court had recently declared each of them to be acting in forma pauperis. In light of that determination, plaintiffs claimed that requiring them to pay a portion of the "up front" arbitration fees effectively precluded them from pursing their claims against Callahan in the arbitration forum. Callahan not only opposed that motion, but also filed its own motion for an order *dismissing the arbitration* on the basis that plaintiffs were not complying with their obligation to share in the cost.

The trial court denied both motions. In denying plaintiffs' motion, the court implied that plaintiffs' in forma pauperis status was irrelevant, because such a determination merely resulted in a "waiver of court charges," and "d[id] not impose a cost upon the opposing counsel." While the court acknowledged that arbitrators "[a]re, apparently, pretty expensive," it also noted "that's life outside this courtroom."

DISCUSSION

In theory, a written contract is the embodiment of a fully and fairly negotiated agreement setting forth the terms and conditions governing a particular transaction or relationship. It reflects the mutual intentions and expectations of both parties, who have an equal understanding of the contract's legal and practical effect. However, in cases where parties to the contract have widely divergent levels of sophistication, a written contract is often less the embodiment of true mutual agreement than it is the product of the drafting party's desire and a series of legal fictions.

First, the law effectively presumes that everyone who signs a contract has read it thoroughly, whether or not that is true. A basic rule of contract law is, "'in the absence of fraud, overreaching or excusable neglect, that one who signs an instrument may not avoid the impact of its terms on the ground that he failed to read the instrument before signing it.'" (*Stewart v. Preston Pipeline Inc.* (2005) 134 Cal.App.4th 1565, 1588.) Moreover, courts must also presume parties understood the agreements they sign, and that the parties intended whatever the agreement objectively provides, whether or not they subjectively did: "'Where the parties have reduced their agreement to writing, their mutual intention is to be determined, whenever possible, from the language of the writing alone.' . . . '[T]he parties' expressed objective intent, not their unexpressed subjective intent, governs.'" (*In re Tobacco Cases I* (2010) 186 Cal.App.4th 42, 47.) And finally, in perhaps the biggest legal fiction of all, we are required to presume that parties to a

7

contract both know and have in mind "'all applicable laws in existence when an agreement is made . . . necessarily enter into the contract and form a part of it, without any stipulation to that effect, as if they were expressly referred to and incorporated.'" (*Swenson v. File* (1970) 3 Cal.3d 389, 393.)

Here, what these legal fictions mean is that while we certainly believe Callahan was fully aware of and intended to enter into the arbitration provisions included in its retainer agreements, we merely *presume* plaintiffs were and did. And while we also believe Callahan understood that because its arbitration provisions were *silent as to cost*, Code of Civil Procedure section 1284.2 would form a part of the provision and require plaintiffs to "pay [a] pro rata share of the expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator," we merely acknowledge that plaintiffs *are presumed* to have understood that too.

But presuming plaintiffs understood they would have to share in the cost of arbitration is as far as these legal fictions take us. Plaintiffs' presumed knowledge of the law does not afford us any basis to conclude they would have had any idea of just *how much* a pro rata share of those expenses and fees might be. Code of Civil Procedure section 1284.2 does not specify amounts, and there is no evidence Callahan ever disclosed that information to plaintiffs – or even hinted to them that the out-of-pocket cost of an arbitration forum would be *significantly* higher than the cost of paying filing fees in court.

Moreover, as long as we are presuming parties' knowledge of the law, we will presume both plaintiffs *and Callahan* were aware of California's long standing public policy of ensuring that all litigants have access to the justice system for resolution of their grievances, without regard to their financial means. (*Martin v. Superior Court* (1917) 176 Cal. 289.) As our Legislature has declared, "our legal system cannot provide

8

'equal justice under law' unless all persons have access to the courts without regard to their economic means." (Gov. Code, § 68630, subd. (a).)

Yet despite that policy, the arbitration provision drafted by Callahan reflects no effort to ensure that clients of limited means would have equal access to the alternative forum it mandates. In *Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, (*Gutierrez*), the court focused on the inherent unfairness of an arbitration agreement which purports to bind a litigant to the alternative forum, while offering no opportunity for the litigant to obtain fee waivers similar to those available in court: "The flaw in this arbitration agreement is readily apparent. Despite the potential for the imposition of a substantial administrative fee, there is no effective procedure for a consumer to obtain a fee waiver or reduction. A comparison with the judicial system is striking. While imposing far lower mandatory fees, the judicial system provides parties with the opportunity to obtain a judicial waiver of some or all required court fees." (*Gutierrez*, at p. 91.) Based on that concern, *Gutierrez* held that a mandatory arbitration agreement contained in an automobile lease was substantively unconscionable because it required plaintiffs to pay approximately $8,000 to initiate the arbitration process, without providing any opportunity for them to obtain a waiver on the ground that those costs exceed their ability to pay: "[W]here a consumer enters into an adhesive contract that mandates arbitration, it is unconscionable to condition that process on the consumer posting fees he or she cannot pay." (*Id.* at p. 89, fn. omitted.)

In *Parada v. Superior Court* (2009) 176 Cal.App.4th 1554 (*Parada*), this court relied in part on *Gutierrez* in concluding that an arbitration agreement contained in a securities purchase agreement was unenforceable because it imposed unreasonably high forum costs – including the requirement that all disputes be decided by a three-arbitrator panel – without apparent need. In determining the provision was unconscionable, this court relied not only on the fact the plaintiffs were of limited means and unable to afford their pro rata share of the arbitration cost, but also on the inference that defendant's goal

9

in drafting the agreement "must [have been] to discourage or prevent Monex customers from vindicating their rights." (*Parada, supra,* 176 Cal.App.4th at p. 1582.)

Here, we could easily draw a similar inference. At the time these retainer agreements were entered into, each of these elderly clients was the recipient of federal Section 8 housing subsidies. Consequently, it would seem unlikely that any would be expected to have sufficient available funds to pay a pro rata share of the cost of even a fairly brief arbitration. When we combine that with the fact Callahan has already sought dismissal of the arbitration proceeding due to plaintiffs' claimed inability to pay their portion of the upfront cost, it suggests an affirmative effort to deprive plaintiffs of access to any forum at all.

However, we need not go as far as either *Gutierrez* or *Parada* did in resolving this appeal. We need not, and do not, reach the issue of whether the arbitration agreements are actually unenforceable for any of the reasons set forth in plaintiffs' oppositions to Callahan's petitions to compel arbitration. Instead, we assume for purposes of this appeal that the courts' earlier orders compelling arbitration were correct. The only issue before us is whether plaintiffs, each of whom were subsequently granted permission to proceed in forma pauperis in the trial court, could likewise be excused from the obligation to pay fees associated with arbitration. We conclude they could.

If, as plaintiffs contend, they lack the means to share the cost of the arbitration, to rule otherwise might effectively deprive them of access to any forum for resolution of their claims against Callahan. We will not do that. Of course, as the trial court recognized, we cannot order the arbitration forum to *waive its fees*, as a court would do in the case of an indigent litigant. Nor do we have authority to order Callahan to pay plaintiffs' share of those fees. What we can do, however, is give Callahan a choice: if the trial court determines that any of these plaintiffs is unable to share in the cost of the arbitration, Callahan can elect to either pay that plaintiff's share of the arbitration cost and remain in arbitration, or waive its right to arbitrate that plaintiff's claim.

10

Admittedly, this resolution may result in Callahan paying a greater share of the arbitration cost than its retainer agreements otherwise required. But given the financial condition of these clients at the time they signed those retainer agreements, Callahan could not have been confident they would ever be able to pay a great deal toward the cost of arbitration in the event of a dispute. In fact, it might be fair to say Callahan had more of a hope than an expectation that arbitration costs would ever actually be shared with these plaintiffs. And when we balance that mere hope against the very real possibility these plaintiffs might be deprived of a forum if they are accorded no relief from these costs, it is clear which consideration must prevail.

Consequently, we reverse the trial court's order denying plaintiffs' motion. And because the trial court made no express findings concerning plaintiffs' claimed inability to share the cost of arbitration in connection with its prior order, we remand the case to the trial court with directions to do so. Specifically, the trial court must estimate the anticipated cost of the arbitration proceeding previously ordered, and then determine whether any of these plaintiffs are financially able to pay their pro rata share of that cost. If the court determines that any plaintiff is unable to do so, it must issue an order specifying that Callahan has the option of either paying that plaintiff's share of the arbitration cost or waiving its right to arbitrate that that plaintiff's case and allowing the case to proceed in court.

Finally, if the court determines that one or more, but not all, of the plaintiffs are unable to pay their anticipated share of the arbitration cost, and Callahan elects to waive its right to arbitrate their claims rather than pay those plaintiffs' share of the arbitration cost, then the court is directed to further consider whether the policy of avoiding conflicting rulings on common issues of law or fact supports an order requiring all of the plaintiffs' claims to be consolidated for trial in the superior court. (Code of Civ. Pro., § 1281.2, subd. (c).)

11

DISPOSITION

The order is reversed, and the matter is remanded to the trial court for further proceedings as specified herein.  Plaintiffs are to recover their costs on appeal.

**CERTIFIED FOR PUBLICATION**

RYLAARSDAM, J.

WE CONCUR:

O'LEARY, P. J.

MOORE, J.

12