Filed 2/8/23; certified for publication 3/7/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JIMMY HANG, | |
| Plaintiff and Respondent, | G061265 |
| v. | (Super. Ct. No. 30-2021-01211055) |
| RG LEGACY I, LLC, et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, Gregory H. Lewis, Judge.  Affirmed.  Motion to Dismiss.  Denied.

Lewis Brisbois Bisgaard & Smith, Tracy D. Forbath and Kathleen M. Walker for Defendants and Appellants.

Arias Sanguinetti Wang & Torrijos, Mike Arias and Robert M. Partain for Plaintiff and Respondent.

In the capacity of successor in interest to his father, decedent Daniel Hang, plaintiff Jimmy Hang sued defendants RG Legacy I, LLC, 1899 Raymond LLC, and Arlene Rosales for elder abuse and negligent hiring and supervision.[1] The RG Legacy parties filed a petition to compel arbitration of those claims pursuant to arbitration agreements Jimmy entered on Daniel's behalf when Daniel was admitted to a RG Legacy parties' skilled nursing facility. Jimmy opposed the petition arguing, inter alia, Daniel had been indigent and his estate has no funds to pay arbitration fees and costs.

Citing *Roldan v. Callahan & Blaine* (2013) 219 Cal.App.4th 87 (*Roldan*), the trial court found Daniel was indigent at the time of his death and granted the petition to compel arbitration on the condition that, within 15 days, the RG Legacy parties agree to pay all arbitration fees and costs, else waive the right to arbitrate the matter. The RG Legacy parties did not agree to pay all arbitration fees and costs and instead filed this appeal.

We affirm. Substantial evidence supports the trial court's findings of Daniel's indigence. The trial court properly applied the holdings of *Roldan* and its progeny in ordering the RG Legacy parties to either agree to pay all arbitration fees and costs or waive arbitration. The RG Legacy parties' refusal to so agree, within the time specified, effected the court's denial of their petition to compel arbitration.

FACTS AND PROCEDURAL BACKGROUND

I.

THE COMPLAINT

In July 2021, Jimmy Hang, both in his capacity as successor in interest to Daniel and as an individual, along with Daniel's surviving spouse Weiping Wu, filed a

---

[1] We refer to Jimmy and Daniel Hang by their first names for clarity; we intend no disrespect. We refer collectively to defendants RG Legacy I, LLC, 1899 Raymond LLC, and Arlene Rosales as the RG Legacy parties.

complaint for damages against the RG Legacy parties. The complaint alleged, inter alia, the RG Legacy parties had been negligent in caring for 65-year-old Daniel after he was admitted to their residential care facility in November 2020, which neglect ultimately led to Daniel's death in February 2021.

The complaint contained claims brought by Jimmy, solely as successor in interest to Daniel, for negligent hiring and supervision and elder abuse (Welf. & Inst. Code, § 15600 et seq.). The complaint also contained a claim brought both by Jimmy, as an individual, and Wu for wrongful death.

II.

THE RG LEGACY PARTIES FILE A PETITION TO COMPEL ARBITRATION WHICH IS OPPOSED BY JIMMY AND WU

In October 2021, the RG Legacy parties filed a petition to compel the arbitration of Jimmy's and Wu's claims based on two arbitration agreements that had been executed by Jimmy as Daniel's "self-appointed agent . . . via a Power of Attorney" upon Daniel's admission to the RG Legacy parties' skilled nursing facility. The RG Legacy parties submitted evidence of an agreement entitled "Arbitration of Medical Malpractice Disputes," signed by Jimmy on November 20, 2020, which provided in part: "The parties understand that any dispute as to medical malpractice (that is, whether any medical services rendered under this admission agreement were necessary or unauthorized or were improperly, negligently or incompetently rendered), will be determined by submission to neutral arbitration as provided by California law, and not by a lawsuit or court process, except as California law provides for judicial review of arbitration proceedings. By entering into this arbitration agreement, both parties give up their constitutional right to have any such dispute decided in a court of law before a jury, and instead accept the use of arbitration." As relevant to the issues presented in this appeal, the medical malpractice arbitration agreement further provided "[t]he arbitration shall be conducted by one or more neutral arbitrators selected from the JAMS in Los

3

Angeles, California" and "[e]ach party shall bear its own costs and fees for the arbitration."

The RG Legacy parties submitted evidence showing on November 20, 2020, Jimmy signed a second document, this one entitled "Arbitration of Dispute Other Than Medical Malpractice" which provided the parties agreed "any claim other than a claim for medical malpractice, arising out of the provision of services by the Facility, the admission agreement, the validity, interpretation, construction, performance and enforcement thereof, or which allege violations of the Elder Abuse and Dependent Adult Civil Protection Act, or the Unfair Competition Act, or which seek an award of punitive damages or attorneys' fees, will be determined by submission to neutral arbitration as provided by California law." Like the medical malpractice arbitration agreement, this agreement stated any arbitration would be conducted by one or more neutral arbitrators selected from JAMS in Los Angeles, California and "[e]ach party shall bear its own costs and fees for the arbitration."

The RG Legacy parties also submitted a copy of Daniel's durable power of attorney, which he executed on August 24, 2016, giving Jimmy the power to act on Daniel's behalf in financial and legal matters.

Jimmy and Wu filed an opposition to the petition to compel in which they argued, inter alia, Daniel had died penniless and there was literally no money in his estate to pay arbitration fees and costs. They argued the trial court should deny the petition to compel arbitration, but argued in the alternative, citing *Roldan, supra*, 219 Cal.App.4th 87, if the court were to grant the petition, it should also order the RG Legacy parties to pay all the costs associated with arbitration.

The opposition was supported by Jimmy's declaration, stating in part: "As the person responsible for my father's financial matters prior to his death and after, I am familiar with the value of my father's estate subsequent to his death. My father died without any money or property. He died without any assets or investments. In short, my

4

father died penniless and his estate has no money to pay for an arbitration." The opposition was also supported by the declaration of Jimmy's counsel, stating he has litigated dozens of elder abuse cases and in his experience, the arbitrator would typically bill more than 50 hours of his or her time on the arbitration proceeding.

### III.

BEFORE THE HEARING ON THE PETITION, JIMMY AND WU DISMISS THEIR WRONGFUL DEATH CLAIM; THE TRIAL COURT THEREAFTER "GRANTS" THE PETITION TO COMPEL ARBITRATION BUT REQUESTS A SEPARATE MOTION TO DECIDE THE ISSUE OF ARBITRATION FEE ALLOCATION

After receiving the trial court's tentative ruling to grant the RG Legacy parties' petition to compel arbitration, but before the hearing on the petition, Jimmy and Wu requested dismissal of their wrongful death claim without prejudice; the clerk entered the dismissal of that claim accordingly. (The court's tentative ruling had invited Jimmy and Wu to submit declarations regarding their financial ability to pay their share of the arbitration fees and costs.) Following entry of dismissal of that claim, only claims brought by Jimmy as successor in interest to Daniel (e.g., the elder abuse and negligent hiring and supervision claims) remained in the case.

At the December 6, 2021 hearing on the petition to compel arbitration, Jimmy's counsel reiterated, pursuant to the *Roldan* decision, and in light of the fact Daniel's estate had no assets as established by Jimmy's declaration, the court should order the RG Legacy parties to pay all the fees and costs associated with the arbitration. The following colloquy ensued:

"The Court: With regard to the costs of arbitration, I've made myself perfectly clear on that. Arbitration is to be an equal opportunity access to that resolution procedure. If the party—one of the parties cannot afford to pay for the arbitration, then the other side is either going to pick up the arbitration cost or they won't go through with arbitration. That's kind of the rule.

5

"[Jimmy's counsel]: Your Honor, we want you to make that determination today.

"The Court: I don't make that determination because I don't have sufficient facts.

"[Jimmy's counsel]: You do, Your Honor, because we dismissed the other two plaintiffs on Friday. You wanted more information from those parties, and we dismissed them.

[¶] . . . [¶]

"The Court: In order to grant what you are asking, I would have to have more information. I would have to have something like a financial statement."

After Jimmy's counsel responded, "[t]here are no financial documents because there's no money," the court stated: "You've read my [tentative] ruling. You understand what I'm ruling with regard to somebody that does not have the funds to go forward for the arbitration. [¶] . . . [¶] Make a motion in all regards on whatever financial aspects there are that you need some resolution on, I don't have a problem with that. But I'm not doing it today because I don't have it in front of me. You know the general rule. You know what I'm ruling. The tentative becomes final."

The RG Legacy parties' counsel confirmed the court sought a separate "*Roldan* motion providing the Court with more information." The discussion on this point concluded with the court stating: "To be honest with you gentlemen, I haven't had this occasion arise before in my 34 years on the bench. It's an interesting one, but it makes a lot of sense to me. You can't order arbitration and have somebody pay for it that doesn't have the funds."

The court's tentative decision became its final ruling in the court's minute order dated December 6, 2021 in which the court stated it "granted" the petition to compel arbitration and took under submission the matter as to whether Jimmy (as successor in interest) would be required to pay his share of arbitration fees and costs.

6

## Jimmy Files a Motion to Require the RG Legacy Parties to Pay Arbitration Fees and Costs Pursuant to *Roldan*

In January 2022, Jimmy filed a motion to allocate the fees and costs of arbitration under *Roldan, supra*, 219 Cal.App.4th 87 on the ground the evidence he offered in support of the motion showed "Daniel Hang is unable to afford the significant costs associated with the arbitration in this matter and [the RG Legacy parties], the parties who moved to compel arbitration in this case, should be required to either pay the entirety of the costs and fees associated with the arbitration or waive their right to arbitration."

Jimmy produced evidence of the fee schedule for the arbitrator who the trial court had confirmed to arbitrate the parties' dispute showing an hourly rate of $650 for hearing fees and administrative fees in the amount of $500 per party. Jimmy resubmitted his counsel's declaration stating, in his experience, an arbitrator in a similar elder abuse arbitration would typically bill over 50 hours.

Jimmy also submitted a new declaration in which he set forth additional information about Daniel's financial condition and that of his estate. In his declaration, Jimmy described the only source of income for his father from 2017 until the time of his death to be from social security at $826.00 a month which was deposited into a trust account at his father's former facility and the present RG Legacy parties' facility and mostly utilized for his father's care. The Social Security Administration's letter to his father describing this benefit was attached as an exhibit to his declaration. At the time of Daniel's death, Jimmy stated his father's trust account had "accumulated approximately $7,000 . . . at the [RG Legacy parties'] facility" which was utilized to pay for his father's funeral and burial expenses. Jimmy also provided the most recent balances on his father's checking (-$12.00) and savings ($389.22) accounts which were closed by Jimmy prior to his father's death. Jimmy described transferring the monies from the bank

accounts to his "father's trust account at the skilled nursing facility" and attached as exhibits statements for those accounts. At the time of Daniel's death, Jimmy asserted his father had died "penniless" as he had no other "assets or property" such as retirement accounts, investment accounts, and stocks or bonds. Consequently, Jimmy declared, his "father's estate is unable to afford the costs associated with arbitration."

V.

THE TRIAL COURT GRANTS THE MOTION TO ALLOCATE ARBITRATION FEES AND COSTS

In a minute order dated March 14, 2022 the trial court ruled:

"Plaintiff Daniel Hang's Motion to Allocate Cost[s] and Fees of Arbitration is GRANTED. At the time of his death, Daniel Hang was indigent. . . . [¶] *Within fifteen (15) days, Defendants have the option to agree [to] pay the entire arbitration costs and fees. Defendants shall submit a Declaration regarding its decision. If Defendants do[] not agree to pay the entire arbitration costs and fees, then Defendants will have waived the right to arbitrate this dispute.*

"Code Civ. Proc., § 1284.2 provides that 'Unless the arbitration agreement otherwise provides or the parties to the arbitration otherwise agree, each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator, not including counsel fees or witness fees or other expenses incurred by a party for his own benefit.'

"The arbitration agreement did not disclose or estimate the cost of the fees and costs that would be incurred. '"[W]here a consumer enters into an adhesive contract that mandates arbitration, it is unconscionable to condition that process on the consumer posting fees he or she cannot pay.' (*Roldan v. Callahan & Blaine* (2013) 219 Cal.App.4th 87, 95.)

8

"'[T]he trial court must estimate the anticipated cost of the arbitration proceeding previously ordered, and then determine whether any of these plaintiffs are financially able to pay their pro rata share of that cost. If the court determines that any plaintiff is unable to do so, it must issue an order specifying that [Defendants] [have] the option of either paying that plaintiff's share of the arbitration cost or waiving its right to arbitrate that plaintiff's case and allowing the case to proceed in court. . . .

"Plaintiff estimated the total cost of the arbitration to be $33,000.00. Defendants did not challenge this estimate. Plaintiff Daniel Hang, by and through his successor in interest Jimmy Hang, is the only Plaintiff. Jimmy Hang and Weiping Wu['s] . . . Third Cause of Action for Wrongful Death was dismissed.

"Daniel Hang's only source of income was from Social Security in the sum of $826.00 per month. He had a checking account of $305.00, which was transferred to a trust account at the skilled nursing facility. The trust account had $7,000.00, which [was] used to pay funeral and burial expenses. At the time of his death, he did not have any other assets or property." (Italics added.)

The RG Legacy parties did not file a declaration or otherwise agree to assume responsibility to pay all arbitration fees and costs. Instead, on April 4, 2022, they filed a notice of appeal from the order.

THE MOTION TO DISMISS THE APPEAL

Jimmy filed a motion to dismiss this appeal on the ground the RG Legacy parties' appeal is taken from a nonappealable order. He argues this court should dismiss this appeal for lack of appellate jurisdiction and award him $8,840 in sanctions for the filing of a frivolous appeal.

"The right to appeal is wholly statutory. [Citation.]" (*Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5.) "An order denying a motion to compel arbitration is an appealable order. (Code Civ. Proc., § 1294,

9

subd. (a).)" (*Coughenour v. Del Taco, LLC* (2020) 57 Cal.App.5th 740, 747 (*Coughenour*).) There is no statute conferring the right to appeal from an order granting a motion to compel arbitration. (*Gastelum v. Remax Internat., Inc.* (2016) 244 Cal.App.4th 1016, 1022-1023.)

Whether this court has jurisdiction depends on whether this appeal has been taken from an order granting arbitration, denying arbitration, or, as argued in Jimmy's motion to dismiss, one that "neither grants [n]or denies any Petition to Compel Arbitration, but rather directs Appellants to pay the costs and fees associated with the arbitration or waive their right to arbitrate."

Although the trial court's December 6, 2021 minute order stated the court granted the petition to compel arbitration, it is evident from the minute order as a whole, as confirmed by the trial court's comments at the hearing on the petition of the same date, that the court's "grant" of the petition constituted its ruling on the scope of the arbitration agreements at issue and their applicability to the parties and the dispute in this case only. Jimmy had argued in his opposition to the petition Daniel was indigent at the time of his death and his estate could not pay its share of arbitration fees and costs should the court compel arbitration. Therefore, the issue of the proper allocation of arbitration fees and costs pursuant to *Roldan* and its progeny were squarely before the court at that time.

At the hearing on the petition on December 6, 2021, the court stated while it found the arbitration agreements enforceable with regard to the parties' dispute, it was not then prepared to rule on the issue of the proper allocation of arbitration fees and costs and requested Jimmy file a noticed motion with additional evidence addressing that issue. The court's minute order also stated the court took under submission whether Jimmy would be required to pay arbitration fees and costs. Therefore, notwithstanding the "grant" language of the minute order, the record establishes the court's ruling on the petition to compel arbitration was not yet complete as of that date.

10

After Jimmy filed the requested noticed motion and the RG Legacy parties filed their opposition, in its minute order dated March 14, 2022, the court found Daniel's estate to be without any funds to pay arbitration fees and costs. The court then gave the RG Legacy parties a choice—to either agree (by declaration) to pay the entire amount of arbitration fees and costs within 15 days, or waive the right to arbitrate the dispute. In other words, if the RG Legacy parties agreed to pay the entire amount of the arbitration fees and costs within the specified timeframe, the petition to compel arbitration on those terms would be granted. If the RG Legacy parties did not so agree, the petition to compel would be denied and the parties would resume litigation in the trial court.

The RG Legacy parties did not agree to arbitration fees and costs within the specified timeframe. Thereafter, the trial court's conditional order was self-executing to effect, at the expiration of the specified time period, a denial of the petition to compel arbitration. (See Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2022) ¶ 2:168, p. 2-124 ["An order granting a motion to vacate *subject to specified conditions* (e.g., payment of costs and attorney fees) is immediately appealable if it is *self-executing* and requires no further vacating order"].)

As discussed *ante*, an order denying arbitration, which is what we have here by operation of the court's March 14, 2022 minute order, is appealable. Jimmy's motion to dismiss the appeal and his concomitant request for sanctions (and renewed request for sanctions made in his respondent's brief), are therefore without merit and denied.

DISCUSSION

I.

STANDARD OF REVIEW

"""""There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the

11

court's denial rests solely on a decision of law, then a de novo standard of review is employed.""" [Citation.]" (*Coughenour, supra*, 57 Cal.App.5th at p. 747.)

## II.

### OVERVIEW OF *ROLDAN* AND ITS PROGENY

The resolution of the issues presented in this appeal involves our consideration of *Roldan, supra*, 219 Cal.App.4th 87 and the cases that have followed its holding. We therefore begin our analysis by summarizing that authority.

In *Roldan, supra*, 219 Cal.App.4th at pages 89-90, four elderly plaintiffs of limited means sued the attorneys who had represented them in a toxic mold contamination litigation for, inter alia, financial elder abuse, conversion, and breach of fiduciary duty. The defendant attorneys filed petitions to compel arbitration based on the arbitration provision contained in the plaintiffs' retainer agreements. (*Id.* at p. 92.) The plaintiffs opposed the petition, arguing, inter alia, they were unable to afford the cost of arbitration. (*Ibid.*) The trial court granted the defendant attorneys' petition. (*Ibid.*) The trial court also denied the plaintiffs' later motion seeking an order "decreeing they [were] not required to pay any portion of the 'up front' cost of the arbitration" on the grounds they were indisputably indigent and had been each declared to be acting in forma pauperis by the trial court since the petition to compel arbitration was granted. (*Id.* at pp. 92-93.)

Another panel of this court reversed the order denying the plaintiffs' motion regarding arbitration costs. (*Roldan, supra*, 219 Cal.App.4th at p. 96.) Observing the out-of-pocket costs of an arbitration forum would be significantly higher than the cost of paying filing fees, the *Roldan* court acknowledged the "long-standing public policy of ensuring that all litigants have access to the justice system for resolution of their grievances, without regard to their financial means. [Citation.]" (*Id.* at p. 94; see *ibid.* ["As our Legislature has declared, 'our legal system cannot provide "equal justice under

12

law" unless all persons have access to the courts without regard to their economic means'"].)

The *Roldan* court concluded the plaintiffs could be excused from the obligation under Code of Civil Procedure section 1284.2 to pay their share of arbitration fees. (*Roldan, supra*, 219 Cal.App.4th at pp. 94-95.) The court explained: "If, as plaintiffs contend, they lack the means to share the cost of the arbitration, to rule otherwise might effectively deprive them of access to any forum for resolution of their claims against [the defendant law firm]. We will not do that. Of course, as the trial court recognized, we cannot order the arbitration forum to *waive its fees*, as a court would do in the case of an indigent litigant. Nor do we have authority to order [the defendant law firm] to pay plaintiffs' share of those fees. What we can do, however, is give [the defendant law firm] a choice: if the trial court determines that any of these plaintiffs is unable to share in the cost of the arbitration, [the defendant law firm] can elect to either pay that plaintiff's share of the arbitration cost and remain in arbitration or waive its right to arbitrate that plaintiff's claim." (*Id.* at p. 96.)

The California Supreme Court cited *Roldan* with approval in *Jameson v. Desta* (2018) 5 Cal.5th 594, 622 (*Jameson*). In *Jameson*, the Supreme Court struck down a trial court policy of not providing official court reporters in most civil trials, but permitting privately retained court reporters for parties who could afford to pay for them. (*Id.* at p. 599.) The court cited *Roldan* as an example of a decision showing "under California law when a litigant in a judicial proceeding has qualified for in forma pauperis status, a court may not consign the indigent litigant to a costly private alternative procedure that the litigant cannot afford and that effectively negates the purpose and benefit of in forma pauperis status." (*Id.* at p. 622.)

Appellate courts have not only followed *Roldan*, but expanded upon its holding. In *Weiler v. Marcus & Millichap Real Estate Investment Services, Inc.* (2018) 22 Cal.App.5th 970, 981 (*Weiler*), another panel of this court held: "[W]hen a party who

13

has engaged in arbitration in good faith is unable to afford to continue in such a forum, that party may seek relief from the superior court. If sufficient evidence is presented on these issues, and the court concludes the party's financial status is not a result of the party's intentional attempt to avoid arbitration, the court may issue an order specifying: (1) the arbitration shall continue so long as the other party to the arbitration agrees to pay, or the arbitrator orders it to pay, all fees and costs of the arbitration; and (2) if neither of those occur, the arbitration shall be deemed 'had' and the case may proceed in the superior court. [Fn. omitted.]" (See *id.* at p. 978 [if the plaintiff's claimed inability to pay were true, "forcing her to remain in the arbitral forum with an obligation to pay half the fees will lead to 'the very real possibility [that she] might be deprived of a forum' to resolve her grievances against defendants"].) More recently, in *Aronow v. Superior Court* (2022) 76 Cal.App.5th 865 at pages 881 and 884 (*Aronow*), the appellate court stated it followed "*Roldan*'s approach" and held the trial court should decide the issue of arbitrator fee payment before the commencement of arbitration.

III.

SUBSTANTIAL EVIDENCE SHOWS, AT THE TIME OF HIS DEATH, DANIEL WAS INDIGENT AND HIS ESTATE WAS UNABLE TO PAY ARBITRATION FEES AND COSTS

As discussed *ante*, Jimmy raised the issue of Daniel's indigency and his estate's inability to pay the arbitration fees and costs in his opposition to the RG Legacy parties' petition to compel arbitration. At the trial court's direction, Jimmy thereafter filed a noticed motion seeking an order requiring the RG Legacy parties to pay all arbitration fees and costs, in support of which he provided declarations and exhibits showing the estate's insolvency. (See *Aronow, supra*, 76 Cal.App.5th at p. 885 ["[W]e hold that the trial court has discretion to decide [the plaintiff's] ability to pay arbitration fees and can do so upon declarations with supporting exhibits or after conducting an evidentiary hearing"].)

14

Based on that evidence, the trial court concluded Daniel was indigent at the time of his death because (1) Daniel's only source of income was from the Social Security Administration in the monthly amount of $826, (2) his trust account containing $7,000 was used to pay Daniel's funeral and burial expenses, and (3) Daniel had no other assets or property. The RG Legacy parties do not challenge the court's findings as unsupported by substantial evidence.

Instead, the RG Legacy parties argue insufficient evidence shows the estate cannot afford to pay its share of the arbitration expenses because "Jimmy's declaration does not explain if [Daniel] had any property, stocks, bonds or other assets that were moved or otherwise distributed prior to his death." Although nothing in the record even suggests any such property, stocks, or bonds, etc. existed, even if assets had been transferred out of Daniel's estate before his death, the evidence is undisputed the estate had no resources to pay arbitration fees and costs at the time of his death.

In any event, "[w]here a party to a contract with an arbitration provision opposes a motion to compel arbitration on the ground of inability to pay the costs, *the moving party* can ask leave to conduct limited discovery directed only to the opponent's financial circumstances." (*Aronow, supra*, 76 Cal.App.5th at p. 884, italics added.) In such a circumstance, the moving party does not risk waiving the right to arbitration for seeking such leave. (*Ibid.*) The RG Legacy parties never sought such leave.

The RG Legacy parties challenge Jimmy's counsel's declaration submitted in support of the motion seeking an order allocating arbitration costs on the ground it "does not state how he arrived at an estimated 50 hours for the proposed arbitration." The referenced declaration by attorney Robert M. Partain states in relevant part: "I have litigated dozens of Elder Abuse cases in arbitration. In my experience, the arbitrator routinely bills more than 50 hours of his or her time on the arbitration proceeding, depending on the amount of law and motion, discovery, and other pre-arbitration disputes

15

between the parties."[2]  The RG Legacy parties did not object to any part of Partain's declaration, and there is nothing inherently incredible about Partain's time estimate for an arbitration of this kind based on his experience.  The trial court did not err by relying on Partain's estimate.

The RG Legacy parties also argue Jimmy failed to submit evidence showing "the Estate's counsel did not agree to advance all litigation expenses, which would necessarily include covering the fees and cost of the arbitration proceedings."  They cite a statement found by their counsel on Jimmy's counsel's Web site stating "'You will pay no upfront costs and no attorney fees unless we win.'"  Whether Jimmy's counsel agreed to *advance* litigation expenses or otherwise required no payment of upfront costs by its clients does not bear on whether Jimmy, or any other client, would be ultimately liable for arbitration fees and costs incurred.  In any event, "the ability of a litigant's attorney to pay for arbitration costs is not relevant.  (See *Isrin v. Superior Court* (1965) 63 Cal.2d 153, 165 [right to proceed in forma pauperis in appropriate cases may not be denied on ground that counsel for indigent litigant is representing litigant pursuant to a contingent fee contract].)"  (*Aronow, supra*, 76 Cal.App.5th at p. 885, fn. 7.)

Sufficient evidence therefore supports the trial court's findings of Daniel's indigency and his estate's inability to pay any share of the arbitrator's fees and costs in this case.

IV.

THE TRIAL COURT DID NOT ERR BY REQUIRING THE RG LEGACY PARTIES TO EITHER AGREE TO PAY ALL ARBITRATION FEES AND COSTS OR WAIVE ARBITRATION

In light of *Roldan* and its progeny, combined with the court's indigency finding, which as discussed *ante* is supported by substantial evidence, the trial court did

---

[2]  The confirmed arbitrator's hourly fee of $650 multiplied by 50 hours is $32,500.  The trial court's March 14, 2022 minute order states in part:  "Plaintiff estimated the total cost of the arbitration to be $33,000.00.  Defendants did not challenge this estimate."

not err by offering the RG Legacy parties the alternatives of either agreeing to pay all arbitration fees and costs or foregoing arbitration and resuming litigation in the trial court.

We reject the RG Legacy parties' argument *Roldan* can only apply to individuals and not to estates, even insolvent estates without means to pay arbitration fees. Neither *Roldan* nor any other case cited by the RG Legacy parties supports such a limited application of *Roldan*'s holding.

The RG Legacy parties also argue Daniel's estate should not be excepted from paying its share of arbitration fees and costs because it cannot qualify to proceed in forma pauperis, and neither of the now-dismissed plaintiffs in this case (e.g., Jimmy in his individual capacity and Wu) have established they could satisfy the requirements for proceeding in forma pauperis. But it is well established "in forma pauperis status is not a prerequisite; however, the procedures for that determination provide a ready template should the trial court decide to employ it [citation]" in determining the allocation of arbitration fees and costs. (*Aronow, supra*, 76 Cal.App.5th at p. 884; *id.* at p. 880 ["in forma pauperis status is not required in the first instance for a litigant to seek relief from fees and costs that inhibit his right of access to the judicial process"].)

Jimmy, in his individual capacity, and Wu were dismissed from this case before the trial court's ruling; their financial status is therefore irrelevant to the prosecution of the elder abuse and negligent hiring and supervision claims brought by Jimmy solely in his capacity of successor in interest to Daniel. Even if information about their financial status might be somehow relevant to the determination of the allocation of arbitration fees and costs, the RG Legacy parties did not seek leave to conduct discovery of such information.

Finally, the RG Legacy parties argue because the arbitration agreements here were voluntary (e.g., admission to the skilled nursing home was not contingent on Jimmy signing them on Daniel's behalf) and expressly state the parties shall bear their

17

own arbitration costs as authorized by section 1284.2 of the Code of Civil Procedure, they should not have to shoulder all arbitration fees and costs. That the parties may have voluntarily entered the arbitration agreements does not answer the question whether Daniel's estate, at the time arbitration proceedings would commence, was able to pay its share of arbitration fees and costs. The rule cannot be that a party who had voluntarily entered an arbitration agreement later loses the right to pursue claims if that party is indigent and without means to pay the agreed share of arbitration fees and costs. (See *Weiler, supra*, 22 Cal.App.5th at p. 975 [trial court erred by granting summary judgment because triable issues of material facts existed regarding the plaintiff's present ability to continue paying her agreed share of fees to complete arbitration].)

As stated in *Weiler*: "Though the law has great respect for the enforcement of valid arbitration provisions, in some situations those interests must cede to an even greater, unwavering interest on which our country was founded—justice for all. Consistent with *Roldan*, and federal and California arbitration statutes, a party's fundamental right to a forum she or he can afford may outweigh another party's contractual right to arbitrate." (*Weiler, supra*, 22 Cal.App.5th at p. 973.)

We find no error.

DISPOSITION

The order is affirmed.  Respondent shall recover costs on appeal.


MOTOIKE, J.

WE CONCUR:


GOETHALS, ACTING P. J.


SANCHEZ, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JIMMY HANG, | |
| Plaintiff and Respondent, | G061265 |
| v. | (Super. Ct. No. 30-2021-01211055) |
| RG LEGACY I, LLC, et al., | ORDER GRANTING REQUEST FOR PUBLICATION |
| Defendants and Appellants. | |

Respondent Jimmy Hang and attorney Ingrid M. Evans have requested our opinion, filed February 8, 2023, be certified for publication. It appears our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c)(2), (3), and (6). The request is GRANTED. The opinion is ordered published in the Official Reports.


MOTOIKE, J.

WE CONCUR:


GOETHALS, ACTING P. J.


SANCHEZ, J.