Filed 4/30/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RAE WEILER,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>MARCUS & MILLICHAP REAL ESTATE INVESTMENT SERVICES, INC. et al.,<br><br>    Defendants and Respondents. | G053953<br><br>(Super. Ct. No. 30-2015-00764843)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, James L. Crandall, Judge. Reversed and remanded with directions.

Cornelius P. Bahan, and Cornelius P. Bahan for Plaintiff and Appellant.

Cooper, White & Cooper, William H. G. Norman and Jill B. Rowe for Defendants and Respondents.

\*          \*          \*

# INTRODUCTION

Plaintiff Rae Weiler seeks a declaration and order from the superior court that defendants Marcus & Millichap Real Estate Investment Services, Inc., et al., must either (1) pay plaintiff's share of the costs in the previously ordered arbitration, or (2) waive their contractual right to arbitrate the underlying claims and allow them to be tried in the superior court. We conclude, based primarily on *Roldan v. Callahan & Blaine* (2013) 219 Cal.App.4th 87 (*Roldan*), plaintiff may be entitled to the relief she seeks.

Plaintiff and her husband allegedly lost more than $2 million at the hands of defendants—the basis for her underlying breach of fiduciary duty, negligence and elder abuse claims. After being ordered to arbitration and pursuing her claims in that forum for years, plaintiff asserted she could no longer afford to arbitrate. According to plaintiff, if she must remain in arbitration and pay half of the arbitration costs—upwards of $100,000—she will be unable to pursue her claims at all.

Plaintiff initially sought *Roldan* relief from the arbitrators. But they ruled it was outside their jurisdiction, and they directed her to the superior court. So, plaintiff filed this declaratory relief action in the superior court, again seeking relief under *Roldan*. However, the superior court granted summary judgment to defendants on the grounds the arbitration provisions were valid and enforceable, and that plaintiff's claimed inability to pay the anticipated arbitration costs was irrelevant. This was error.

Though the law has great respect for the enforcement of valid arbitration provisions, in some situations those interests must cede to an even greater, unwavering interest on which our country was founded—justice for all. Consistent with *Roldan*, and federal and California arbitration statutes, a party's fundamental right to a forum she or he can afford may outweigh another party's contractual right to arbitrate.

In this case, there are triable issues of material fact regarding plaintiff's present ability to pay her agreed share of the anticipated costs to complete the arbitration. The trial court therefore erred in granting defendants' motion for summary judgment.

2

## FACTS AND PROCEDURAL HISTORY

Plaintiff and her husband, now both in their 80's, were fairly well-off at one point in their lives. Among their assets were two properties in Las Vegas, Nevada. In 2006, they exchanged the Las Vegas properties, under federal Internal Revenue Code section 1031, for a commercial property in Texas which was improved with a Red Robin restaurant and was supposedly worth $4.1 million.

Defendants represented plaintiff and her husband in the property exchange transactions. All of the relevant contracts plaintiff and her husband signed with defendants contained arbitration clauses.

When they acquired the Texas property, plaintiff and her husband believed they would receive rent payments from the tenant, Red Robin. They also understood that the lease obligated the tenant to pay the property taxes.

Shortly after the Texas escrow closed, the tenant became delinquent in making rent payments and failed to pay the property taxes. This persisted throughout the next seven years, leading to an alleged loss to plaintiff and her husband of more than $600,000 in income alone. The couple ultimately sold the Texas property for $2.1 million less they paid for it.

Before selling the Texas property at a loss, plaintiff filed suit against defendants (the underlying court action), claiming breach of fiduciary duty, negligence, negligent misrepresentation and elder abuse, and seeking compensatory and punitive damages. The complaint in the underlying court action alleged plaintiff had informed defendants "she knew very little about commercial real estate investing, . . . and that she wanted a safe and secure investment with a decent return." It further alleged defendants recommended the Texas property because it was a "wonderful investment" and the restaurant on the property "was busy and doing well financially." And it alleged she acquired the Texas property for $2 million above fair market value, based on misrepresentations and other wrongdoing by defendants.

3

In response to the complaint, defendants filed a motion to compel arbitration. Plaintiff did not oppose the motion, and the court ordered the matter to be arbitrated by the American Arbitration Association (AAA). The court also stayed underlying court action pending completion of the arbitration, and it expressly retained jurisdiction for purposes of monitoring the progress of the arbitration.

Over the course of the next two years or so, the arbitration proceedings moved forward slowly. From the outset, the parties disagreed not only about the substance of plaintiff's claims, but also about how the arbitration should proceed. For example, due to the amount of plaintiff's claim—$2.8 million—defendants insisted the AAA rules dictated the case could "*only be heard and determined by a Panel of three arbitrators.*" Plaintiff, on the other hand, believed a single arbitrator was permissible and appropriate. An arbitrator eventually ordered the case to be decided by a three-person panel, at an hourly rate of $1,450.

The arbitration panel set a discovery schedule and established procedural rules for the arbitration. The parties engaged in discovery.

Nearly three years after the court ordered the arbitration, and during a second prehearing conference with the arbitrators, plaintiff asserted she was unable to afford her 50-percent share of the arbitration costs. Relying on *Roldan, supra*, 219 Cal.App.4th 87, plaintiff asked the arbitrators to issue an order giving defendants two options: (1) continue with the arbitration and pay the entire cost of it; or (2) have the matter tried in superior court instead. At the time, plaintiff's share of the arbitration costs had already exceeded $15,000, and she anticipated the overall costs to complete the arbitration would be upwards of $100,000, not including expert witness and discovery related fees.

The arbitrators concluded *Roldan* relief was beyond their jurisdiction. So, the panel ordered plaintiff to ask the superior court to determine whether *Roldan* required defendants to be given the two above-described options.

4

Plaintiff filed this separate declaratory relief action, seeking a declaration and order that either: (1) "Defendants [shall] bear the full financial responsibility of the costs of the arbitration"; or (2) "Defendants have waived their right to arbitration and the [u]nderlying [a]ction shall be remanded or refiled in the [s]uperior [c]ourt . . . ."

Defendants eventually moved for summary judgment in this case. Defendants characterized plaintiff's *Roldan* claim as being an "unconscionability" issue. Defendants argued unconscionability must be determined as of the time the arbitration agreement is entered into, and they claimed it was undisputed plaintiff and her husband were wealthy at that time. They also argued plaintiff's *Roldan* claims were untimely because she should have raised them when the court originally considered defendants' motion to compel arbitration.

Plaintiff opposed the motion. She contended, based on *Roldan*, the court had to consider her current financial situation to determine whether defendants should be forced to pay her share of arbitration costs or have the matter tried in the superior court. She submitted a declaration detailing her current financial situation. She argued the motion should be denied because there were triable issues of material fact concerning whether she could still afford to arbitrate.

Although the court's tentative ruling was to grant the motion, part way through the hearing it appeared convinced there were triable issues of fact. Defendants, however, persuaded the court to accept additional briefing. After considering the additional briefing and hearing further argument, the court granted summary judgment to defendants. The court believed the issue to be decided was whether the arbitration clause was unconscionable, and the court determined plaintiff's present financial status was irrelevant. It agreed with defendants that unconscionability "look[s] to the facts in existence when the agreement was entered into, not years after the date the contract was entered into[,]" and that the undisputed facts showed plaintiff was previously wealthy.

5

## DISCUSSION

Though presented and argued in various ways, the primary point of contention between the parties is this: Are plaintiff's current financial circumstances relevant to whether her underlying claims against defendants remain in the arbitral forum, at defendants' sole expense, or get transferred to, and tried in, the superior court? For the reasons explained below, we conclude plaintiff's current financial circumstances are relevant, and the summary judgment was granted in error, because there are triable issues of material fact concerning plaintiff's ability to pay her share of the arbitration costs.

"'On review of an order granting or denying summary judgment, we examine the facts presented to the trial court and determine their effect as a matter of law.' [Citation.] We review the entire record, 'considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.' [Citation.] Evidence presented in opposition to summary judgment is liberally construed, with any doubts about the evidence resolved in favor of the party opposing the motion. [Citation.]" (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)

"[A]ny party to an action, whether plaintiff or defendant, 'may move' the court 'for summary judgment' in his favor . . . ." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) "The court must 'grant []' the 'motion' 'if all the papers submitted show' that 'there is no triable issue as to any material fact' . . . and that the 'moving party is entitled to a judgment as a matter of law.'" (*Ibid*., citations omitted.) The party opposing summary judgment may defeat the motion by demonstrating there is one or more triable issues of material fact. (*Id*. at p. 849.) The opposing party "'may not rely upon the mere allegations or denials' of his 'pleadings to show that a triable issue of material fact exists but, instead,' must 'set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto.'" (*Ibid*.)

6

Relying principally on *Roldan, supra*, 219 Cal.App.4th 87, plaintiff questions defendants' ability to force her to continue with the arbitration despite a drastic change in her financial circumstances which allegedly makes arbitration unaffordable for her now. Her declaratory relief complaint seeks a judgment declaring that defendants must pay the entire cost of arbitration if they wish to remain in such a forum, and that if they choose not to do so, the matter may instead proceed to trial in the superior court. These were precisely the issues on which she sought an order from the arbitrators, and the arbitrators told plaintiff to seek *Roldan* relief in the superior court because they believed these issues were outside their jurisdiction.

*Roldan* involved proceedings much like those in this case. The plaintiffs, a group of elderly individuals, sued the lawyers who had represented them in litigation concerning toxic mold contamination in the apartment building where the plaintiffs lived. (*Roldan, supra*, 219 Cal.App.4th at p. 90.) Among the allegations were claims of financial elder abuse, conversion, and breach of fiduciary duty. (*Id*. at p. 92.) One of the defendant law firms successfully moved to compel arbitration based on an arbitration provision contained in the retainer agreement the plaintiffs had signed. (*Ibid*.) The trial court stayed the case before it pending resolution of the matters via arbitration.

A couple of years after being ordered to arbitration, the *Roldan* plaintiffs filed a motion in the superior court, "seeking an order decreeing they [were] not required to pay any portion of the 'up front' costs of the arbitration between themselves and [the defendant]." (*Roldan, supra*, 219 Cal.App.4th at pp. 92-93.) They claimed relief was warranted because their circumstances had changed after the ordered arbitration. (*Id*. at p. 93.) It was undisputed the plaintiffs had since been declared indigent by the court and they could not afford the costs of arbitration, so they contended requiring them to pay arbitration fees in advance would preclude them from pursuing their claims in the arbitral forum. (*Ibid*.) The trial court denied the motion, believing the plaintiffs' changed financial status to be irrelevant. (*Ibid*.)

7

On appeal, we reversed. (*Roldan, supra*, 219 Cal.App.4th at p. 96.) We assumed the trial court's orders compelling arbitration were valid (*id*. at p. 95), but went further based on "California's long-standing public policy of ensuring that all litigants have access to the justice system for resolution of their grievances, without regard to their financial means." (*Id*. at p. 94.) We explained that if the plaintiffs, in fact, lacked the means to pay their share of the costs of arbitration, forcing the matter to remain in such a forum would effectively result in the plaintiffs being deprived of any forum to resolve their claims against the defendant. This was unacceptable. (*Id*. at p. 96.)

In fashioning a remedy, we recognized we do not have the authority to order the arbitrators to waive their fees or to order the defendant to pay the plaintiffs' share of them. (*Roldan, supra*, 219 Cal.App.4th at p. 96.) So, we held that if the trial court were to conclude, on remand, that any of the plaintiffs were unable to share the costs of arbitration, then the defendant should be given a choice: "either pay[] that plaintiff's share of the arbitration cost [and remain in arbitration,] or waive its right to arbitrate that plaintiff's case." (*Ibid*.) Giving this choice to the defendant ensured the plaintiffs would have an affordable forum for resolving their claims without stripping the defendant of the ability to stay out of court if it so desired. (*Ibid*.)

The facts in this case are not materially different from *Roldan*. Plaintiff was ordered to arbitrate her claims and she proceeded to do so. But after nearly three years of arbitration, during which defendants supposedly "engaged in a scorched earth policy and . . . 'piled on' the onerous costs of arbitration[,]" she claims to be unable to continue to afford to arbitrate. Though there are factual disputes about her current financial situation, if her claimed inability to pay is true, forcing her to remain in the arbitral forum with an obligation to pay half the fees will lead to "the very real possibility [that she] might be deprived of a forum" to resolve her grievances against defendants. (*Roldan, supra*, 219 Cal.App.4th at p. 96.) As in *Roldan*, such an outcome is intolerable.

8

The very reason plaintiff filed the underlying court action against defendants is because their alleged wrongful acts led her and her husband to lose a significant amount of money.  And, in the many years of pursuing her case in arbitration, it appears defendants' tactical decisions have further contributed to plaintiff's ostensible financial ruin.  In other words, defendants appear to have effectively hindered plaintiff's continued performance under the arbitration provisions.  Basic contract law dictates that "hindrance of the other party's performance operates to excuse that party's nonperformance."  (*Erich v. Granoff* (1980) 109 Cal.App.3d 920, 930.)

Further, from a public policy standpoint, a defendant accused of wrongdoing should not be permitted to avoid potential liability by forcing the matter to arbitration and subsequently making it so expensive that the plaintiff eventually has no choice but to give up.  To hold otherwise would be to turn ""'and justice for all'"" into ""'and justice for those who can afford it'"" and "'threaten the very underpinnings of our social contract.'"  (*Alan S. v. Superior Court* (2009) 172 Cal.App.4th 238, 263, fn. 25.)  The interest in avoiding such an outcome far outweighs the interest, however strong, in respecting parties' agreements to arbitrate.  (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 90 [preference for arbitration not served by "agreement that effectively blocks every forum for the redress of disputes, including arbitration itself"].)

The California Arbitration Act (Code Civ. Proc., § 1280 et seq. (CAA)) and the Federal Arbitration Act (9 U.S.C. § 1 et seq. (FAA)) lend further credence to our conclusion.[1]  Both are driven by a strong public policy of enforcing arbitration agreements.  (*American Express Co. v. Italian Colors Restaurant* (2013) 570 U.S. 228, 233; *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 98, fn. omitted.)  Thus, a court generally must compel arbitration in accordance with the

---

[1] Because we will conclude the pertinent portions of the CAA and the FAA are to be interpreted in a like manner, we need not decide which scheme governs here.

9

agreement when requested by one of the parties. (Code Civ. Proc., § 1281.2; 9 U.S.C. § 2.) However, the court action does not disappear and it is effectively held in abeyance until the arbitration "has been had in accordance with the terms of the agreement." (9 U.S.C. § 3; compare Code Civ. Proc., § 1281.4.)[2] The court retains vestigial jurisdiction over the court action during that time. (*Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790, 1796; *PMS Distributing Co., Inc. v. Huber & Suhner, A.G.* (9th Cir. 1988) 863 F.2d 639, 642.)

What it means for an FAA arbitration "to be had" was considered under similar circumstances by the Ninth Circuit Court of Appeals in *Tillman v. Tillman* (9th Cir. 2016) 825 F.3d 1069 (*Tillman*). The plaintiff, an attorney who sued a law firm that had represented her in a wrongful death action, was ordered to arbitrate her claims before the AAA pursuant to an arbitration clause in a retainer agreement invoked by the defendant law firm. (*Id*. at pp. 1071-1072.) As the case progressed, the plaintiff "objected to several aspects of the arbitration as unnecessarily increasing costs." (*Id.* at p. 1072.) The arbitrators nevertheless moved forward with those aspects and required a deposit of approximately $18,500 from the plaintiff. (*Ibid*.) She did not have the money to pay the deposit, and the defendant refused to pay it for her. (*Ibid*.)

---

[2] The cited provision of the FAA states more fully: "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action *until such arbitration has been had* in accordance with the terms of the agreement. . . ." (9 U.S.C. § 3, italics added.) The cited provision of the CAA similarly states: "If a court of competent jurisdiction . . . has ordered arbitration of a controversy which is an issue involved in an action or proceeding pending before a court of this State, the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding *until an arbitration is had* in accordance with the order to arbitrate or until such earlier time as the court specifies." (Code Civ. Proc., § 1281.4, italics added.)

After the arbitration was terminated by AAA due to the unpaid deposit, the defendant filed a motion in the district court, asking the court to lift its stay and dismiss the complaint due to, what defendant characterized as, the plaintiff's violation of the order to arbitrate. (*Tillman, supra*, 825 F.3d at p. 1072.) The court found the plaintiff was unable to pay her share of the arbitration fees, but nevertheless dismissed the case because it believed it lacked the authority to hear the arbitrable claims despite the plaintiff's financial condition. (*Id.* at pp. 1072-1073.)

The Ninth Circuit reversed. It found that all the relevant AAA rules had been followed: the AAA prescribed fees, it requested the parties pay the fees in advance as it deemed necessary, and the arbitration proceedings were suspended and, ultimately, terminated due to nonpayment of the full deposit. (*Tillman, supra*, 825 F.3d at p. 1074.) Accordingly, "the arbitration had 'been had' pursuant to the agreement between the [parties,]" and it was proper to lift the stay of the court proceedings. (*Ibid.*) In addition, because the arbitration terminated before the merits were reached or an award issued, the court concluded the plaintiff must be allowed to pursue her claims in the district court—it was "the only way her claims [would] be adjudicated." (*Id.* at p. 1076.) It remanded the case to the district court so that could occur. (*Id.* at p. 1076.)

We find the Ninth Circuit's reasoning in *Tillman* to be sound and agree its conclusion should apply equally to this case under the CAA.

To be clear, this case is not about "unconscionability." A party arguing unconscionability generally contends that, despite being a term mutually agreed to by the parties, the arbitration provision should be deemed unenforceable because: (1) it is "'"'"so one-sided as to "shock the conscience'"'"'" (i.e., it is substantively unconscionable); and (2) it came about by surprise or through a process which was unreasonably oppressive due to, for example, unequal bargaining power (i.e., it is procedurally unconscionable). (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 910-911.) When proven, it is a complete defense to enforcement of an arbitration provision. (*Ibid.*)

11

Here, plaintiff did not argue unconscionability or otherwise challenge the enforceability of the arbitration provisions. She acknowledged the court properly granted defendants' motion to compel arbitration and had issued a corresponding nonappealable order. And, her summary judgment opposition papers clearly stated: "[Plaintiff] is not trying to claim that the arbitration clause was unconscionable when signed nor is she seeking to deprive [defendants] of their right to arbitration. Plaintiff is fine with either forum so long as she can proceed in one of them." The court, therefore, erred in focusing on unconscionability as the primary issue to be decided.

In sum, we hold, as we did in *Roldan*, when a party who has engaged in arbitration in good faith is unable to afford to continue in such a forum, that party may seek relief from the superior court. If sufficient evidence is presented on these issues, and the court concludes the party's financial status is not a result of the party's intentional attempt to avoid arbitration, the court may issue an order specifying: (1) the arbitration shall continue so long as the other party to the arbitration agrees to pay, or the arbitrator orders it to pay, all fees and costs of the arbitration; and (2) if neither of those occur, the arbitration shall be deemed "had" and the case may proceed in the superior court. [3]

---

[3] At oral argument, defendants claimed that allowing parties to seek relief from arbitration in the courts based on their current financial condition creates an open invitation for abuse by those seeking to escape their arbitration obligations. We seriously doubt parties will purposefully make themselves impecunious to have their cases returned to the courts. Regardless, we are more concerned with deep-pocketed parties leveraging their wealth to deprive their opponents of the right to resolve their disputes than we are with parties choosing to bankrupt themselves as a way out of arbitration and into court. And, under our holding today, a court may not grant relief if the evidence demonstrates a party's financial status is a result of the party's intentional attempt to avoid arbitration.

As our Supreme Court has explained, "[b]oth California and federal law treat the substitution of arbitration for litigation as the mere replacement of one dispute resolution forum for another, resulting in no inherent disadvantage." (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1152.)  With the rising costs of arbitration (see *Toyo Tire Holdings Of Americas Inc. v. Continental Tire North America, Inc.* (9th Cir. 2010) 609 F.3d 975, 980-981), our decision today ensures those compelled to arbitrate will not, as a result, be inherently disadvantaged.

**DISPOSITION**

The judgment is reversed.  The matter is remanded with directions to deny defendants' motion for summary judgment.  Plaintiff is entitled to her costs on appeal.


THOMPSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MOORE, J.

13