Filed 4/2/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| GAIL DEE LEW-WILLIAMS et al., | B330387 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 20STCV15993) |
| v. | |
| SEVANA PETROSIAN et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Terry A. Green, Judge.  Reversed.

Nick A. Alden for Plaintiffs and Appellants.

Buchalter, Robert Collings Little and Michael B. Fisher for Defendants and Respondents Sevana Petrosian, Salina Ranjbar, Vana Mehrabian and Staforde Palmer.

—————————————

Gail Dee Lew-Williams, as the surviving spouse and successor in interest of Wilbur Williams, Jr., M.D., and Wilbur Williams, M.D., Inc. (the Corporation; collectively, the Williams plaintiffs)[1] appeal from the March 21, 2023 trial court order dismissing their claims asserted against Williams's former business partner Sevana Petrosian and her associates Salina Ranjbar, Vana Mehrabian, and Staforde Palmer (collectively, the Petrosian defendants). Between 2014 and 2020 the Petrosian defendants operated a chain of medical spas where Williams conducted his medical practice. In April 2020, after the parties terminated their relationship, the Williams plaintiffs sued the Petrosian defendants, Wells Fargo Bank, N.A., and Wells Fargo's branch manager, Hovanes Tonoyan (together, the Wells Fargo defendants).[2] The Williams plaintiffs alleged the Petrosian defendants embezzled approximately $11.5 million from the Corporation's bank accounts and the Wells Fargo defendants aided and abetted the embezzlement.

In July 2021 the trial court granted the motion to compel arbitration filed by the Petrosian defendants. After the Williams plaintiffs failed to initiate arbitration proceedings, in February 2023 the court set a hearing on an order to show cause re: dismissal for failure to prosecute. The court

_____

[1] Williams died on October 28, 2022. On May 2, 2023 the trial court granted Lew-Williams's motion to substitute in as Williams's successor in interest.

[2] The Wells Fargo defendants are not parties to this appeal.

2

subsequently dismissed the Williams plaintiffs' claims against the Petrosian defendants without prejudice.

On appeal, the Williams plaintiffs contend their failure to initiate the arbitration was excused because they did not have sufficient funds, and the trial court erred in compelling arbitration because the parties' agreement to arbitrate was unconscionable and unenforceable. The Petrosian defendants argue in response that the claims were properly dismissed because the Williams plaintiffs had the funds to arbitrate, and further, the Williams plaintiffs should not be allowed on appeal to challenge the trial court's order compelling arbitration before first arbitrating their claims.

We requested the parties submit supplemental briefing on whether the trial court had jurisdiction to dismiss the claims against the Petrosian defendants after they had been compelled to arbitration. It did not. Once the court granted the Petrosian defendants' motion to compel arbitration and stayed the action, it retained only vestigial jurisdiction over the case as provided in the California Arbitration Act (Code Civ. Proc., § 1281 et seq.),[3] and the court did not have the power to dismiss the claims for failure to prosecute. If a party fails to diligently prosecute an arbitration, the appropriate remedy is for the opposing party to seek relief in the arbitration proceeding (and, if necessary, the opposing party may need to initiate the arbitration for this purpose). We reverse.

---

[3]  Further undesignated statutory references are to the Code of Civil Procedure.

3

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Complaint*

Williams and the Corporation filed this action on April 27, 2020. The operative second amended complaint asserted three causes of action against the Petrosian defendants and the Wells Fargo defendants: conspiracy to convert and embezzle funds, financial elder abuse, and declaratory relief. The complaint asserted four additional causes of action against only the Wells Fargo defendants: breach of contract, negligence, bad faith, and unfair business practices.[4]

As alleged, Williams was an 84-year-old physician who operated a medical practice in California through the Corporation, which he wholly owned. On April 12, 2014 Williams on behalf of the Corporation and Petrosian on behalf of her wholly owned company, Petrosian Esthetic Enterprises, LLC (Petrosian Esthetic), executed a management services agreement to operate medical spas and laser hair removal clinics in Glendale

---

[4]    The second amended complaint omitted several material allegations from the verified initial complaint and the first amended complaint. We consider the material allegations omitted from the prior complaints under the sham pleading doctrine. (See *Deveny v. Entropin, Inc*. (2006) 139 Cal.App.4th 408, 425 ["If a party files an amended complaint and attempts to avoid the defects of the original complaint by either omitting facts which made the previous complaint defective or by adding facts inconsistent with those of previous pleadings, the court may take judicial notice of prior pleadings and may disregard any inconsistent allegations."].)

and West Hollywood.[5]  Under the terms of the agreement, the Corporation would provide medical services and make all decisions related to the practice of medicine, while Petrosian Esthetic would provide the facilities and non-medical management services to the Corporation.  As part of these services, Petrosian Esthetic was responsible for collecting patient payments and depositing them into operating accounts belonging to the Corporation, and Petrosian Esthetic was authorized "[t]o sign checks, drafts, bank notes or other instruments on behalf of the [Corporation], and to make withdrawals from the [operating account] for payment specified in [the] Agreement."  Petrosian Esthetic was also "entitled to its actual out-of-pocket costs in providing its services" plus a management fee equal to 15 percent of its costs.

The management services agreement included an arbitration provision that stated in relevant part, "Except for claims seeking injunctive relief and claims for indemnity arising out of third party claims . . . , any dispute, controversy, or claim as between [Corporation] and [Petrosian Esthetic] arising under or relating to this Agreement or any breach or threatened breach thereof shall be resolved by final and binding arbitration administered by the American Arbitration Association ('"AAA"') by a single arbitrator under its Commercial Arbitration Rules. . . .  The parties agree that . . . the arbitrator shall have jurisdiction to make an award to the prevailing party, as determined by the arbitrator, of the costs of such arbitration proceeding as well as reasonable attorneys' fees, costs and

---

[5]     A copy of the management services agreement was attached to the initial complaint and incorporated by reference.

5

expenses incurred by said prevailing party in connection with the arbitration."

As alleged, Petrosian and Ranjbar initially acted as the managers of the West Hollywood and Glendale clinics. In 2017 and 2018 the parties opened seven more clinics throughout California, and Mehrabian and Palmer served as the managers of some of those clinics. The seven new clinics were governed by management services agreements that were substantially identical to the 2014 agreement governing the original clinics, including an identical arbitration provision.

In 2018 Williams opened nine commercial bank accounts (one for each clinic) in the Corporation's name at Wells Fargo's Glendale branch. The second amended complaint alleged on information and belief the Petrosian defendants entered into a conspiracy with Tonoyan to embezzle all of the Corporation's profits, and during the period from January 2018 through March 2020, the Petrosian defendants embezzled approximately $11.5 million from the Corporation's accounts by making large cash withdrawals, wire transfers, and writing checks to themselves using Williams's facsimile signature.

B.    *The Petrosian Defendants' Motion To Compel Arbitration*

On April 27, 2021 the Petrosian defendants filed a motion to compel arbitration of the claims against them and to stay the action pending arbitration.[6] They argued the claims against

---

[6]    Also on April 27, 2021, the Wells Fargo defendants filed a demurrer and motion to strike the second amended complaint. On June 30, 2021 the trial court (Judge Barbara M. Scheper) sustained the demurrer and dismissed the claims against the

them, although styled as a conspiracy with Wells Fargo, were essentially identical to the claims the Williams plaintiffs asserted against them under the management services agreements in an earlier-filed related action, *Wilbur Williams, Jr., M.D., et al. v. Sevana Petrosian, et al.* (Super. Ct. Los Angeles County, 2020, No. 20STCV14137) (*Petrosian I*), which the trial court had compelled to arbitration in August 2020.

The Williams plaintiffs argued in opposition that their claims against the Petrosian defendants in this action were based solely on their conspiracy with the Wells Fargo defendants, who could not be compelled to arbitrate, and as a result, if they were ordered to arbitration, the Williams plaintiffs would need to litigate their claims against the Petrosian defendants in arbitration and the Wells Fargo defendants in court, duplicating effort and potentially leading to inconsistent outcomes. Further, the management services agreements had been induced by fraud, and the arbitration clauses were procedurally and substantively unconscionable (including that they disallowed punitive damages and waived the Williams plaintiffs' right to a jury trial).

On July 8, 2021 the trial court[7] granted the motion to compel arbitration and stayed the action. The court took judicial

_____

Wells Fargo defendants. The Williams plaintiffs appealed, and we reversed and remanded the matter with directions for the trial court to overrule the demurrer to the causes of action for conspiracy and unfair business practices, but to affirm the order sustaining the demurrer to the other causes of action. (See *Williams v. Wells Fargo Bank, N.A.* (June 21, 2022, B314887) [nonpub. opn.] (*Wells Fargo*).) The remittitur issued on October 12, 2022.

[7] Judge Scheper.

7

notice of the management services agreements, noting they authorized the Petrosian defendants to conduct banking on behalf of the Corporation, including signing checks, making withdrawals, and obtaining reimbursement of their costs, plus a management fee. The court found "the gravamen of the [second amended complaint] in this case and the [complaint in *Petrosian I*] is that the Petrosian [d]efendants embezzled money in violation of the Management Services Agreement." Further, the Willliams plaintiffs' arguments that the arbitration provision was unconscionable and unenforceable had been raised and rejected in *Petrosian I*. The court summarily rejected the arguments for the same reasons as in *Petrosian I*.

At the August 19, 2022 status conference, the trial court set a hearing for October 18, 2022 on an order to show cause (OSC) re: dismissal for failure to arbitrate. However, the OSC was taken off calendar after the Williams plaintiffs filed a peremptory challenge to Judge Scheper on October 13 (following issuance of the remittitur in the Wells Fargo appeal), and the case was sent for reassignment.

C.     *Dismissal for Failure To Prosecute the Arbitration*

On February 14, 2023 the trial court[8] set a new OSC re: dismissal for failure to prosecute the arbitration. In a responsive declaration opposing dismissal, the Williams plaintiffs did not dispute that they failed to initiate the arbitration for nearly two years. Nor did they explain their delay or specify a date by when

---

[8]     On October 25, 2022 the case and related cases were reassigned to Judge Terry A. Green.

8

they intended to commence arbitration.[9]  Instead, they again argued the management services agreements were induced by fraud and should be invalidated, making the arbitration provision unenforceable.

In a responsive declaration, the Petrosian defendants' attorney stated the Williams plaintiffs had initiated an arbitration in *Petrosian I* but failed to pay the arbitration fees, and AAA suspended and ultimately terminated the arbitration for nonpayment in April 2022.  After the trial court in *Petrosian I* set an order to show cause re: dismissal for failure to prosecute, the Williams plaintiffs dismissed *Petrosian I*.

After a hearing on the OSC re dismissal in this action, on March 21, 2023 the trial court ordered dismissal of the Petrosian defendants based on the Williams plaintiffs' failure to prosecute the arbitration.  The court found it was undisputed the Williams plaintiffs had not initiated the arbitration.  The court continued, "They offer no excuse for this failure.  They offer no promise to correct it.  They offer nothing, other than the defiant insistence that they are right not to go to arbitration."  Thus, "rather than comply with the orders of the prior judicial officer which were never appealed and never properly presented to her for reconsideration, [p]laintiffs ask this court to simply overrule her," which "[t]his court cannot and will not do. . . ."  The court observed the Petrosian defendants "cannot initiate arbitration because they have no affirmative demands against [p]laintiffs."

---

[9]    The Williams plaintiffs only obliquely raised their inability to finance the arbitration, stating "the only reason Petrosian insists on arbitration is because she knows Plaintiffs have [run] out of money and Dr. Williams is now deceased."  They did not present any evidence they could not afford the arbitration fees.

The court concluded, "Neither [p]laintiffs nor the court can hold defendants in the limbo of an arbitration stay forever," and there was "no reason to believe the case against the Petrosian [d]efendants will ever go to arbitration." The court dismissed the action without citing a statutory basis for the dismissal.

On March 27 the trial court filed an order of dismissal, dismissing the Petrosian defendants without prejudice.[10] The Williams plaintiffs timely appealed.

## DISCUSSION

A. *Governing Law and Standard of Review*

Once a trial court has compelled claims to contractual arbitration, the court has "very limited authority with respect to [the] pending arbitration." (*SWAB Financial, LLC v. E\*Trade Securities, LLC* (2007) 150 Cal.App.4th 1181, 1200 (*SWAB*); accord, *Optimal Markets, Inc. v. Salant* (2013) 221 Cal.App.4th 912, 924 ["Appellate courts have . . . routinely rejected parties' efforts to have courts overstep their limited jurisdiction in cases that are stayed pending binding contractual arbitration."].) As the Supreme Court explained in *Gaines v. Fidelity National Title Ins. Co.* (2016) 62 Cal.4th 1081, 1096, "A party seeking to enforce contractual arbitration is statutorily entitled to a stay of pending legal actions.

---

[10] The order of dismissal states only that Sevana Petrosian is dismissed without referring to the other Petrosian defendants. We assume this is a clerical error because the minute order for the March 21, 2023 OSC hearing states the claims against the Petrosian defendants were dismissed.

10

(§ 1281.4.)[11]  'Once a court grants [a] petition to compel arbitration and stays the action at law, the action at law sits in the twilight zone of abatement with the trial court retaining merely a vestigial jurisdiction over matters submitted to arbitration' to determine, upon conclusion of the arbitration proceedings, whether an award on the merits requires dismissal of the legal action.  [Citation.]  This is so, in part, because the whole point of contractual arbitration is to obviate the need for an action at law." (Quoting *Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790, 1796 (*Brock*); accord, *Titan/Value Equities Group, Inc. v. Superior Court* (1994) 29 Cal.App.4th 482, 487 (*Titan/Value*).)

"During that time, under its 'vestigial' jurisdiction, a court may: appoint arbitrators if the method selected by the parties fails (§ 1281.6); grant a provisional remedy 'but only upon the ground that the award to which an applicant may be entitled may be rendered ineffectual without provisional relief' (§ 1281.8, subd. (b)); and confirm, correct or vacate the arbitration award (§ 1285)." (*Titan/Value, supra,* 29 Cal.App.4th 482, 487; accord, *SWAB, supra,* 150 Cal.App.4th at p. 1200.)  However, "[a]bsent an agreement

---

11    Section 1281.4 provides in relevant part, "If a court of competent jurisdiction . . . has ordered arbitration of a controversy which is an issue involved in an action or proceeding pending before a court of this State, the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies."

11

to withdraw the controversy from arbitration, . . . no other judicial act is authorized.  [Citation.]  [¶]  In the interim, the arbitrator takes over.  It is the job of the arbitrator, not the court, to resolve all questions needed to determine the controversy.  [Citations.]  The arbitrator, and not the court, decides questions of procedure and discovery."  (*Titan/Value*, at pp. 487-488, fn. omitted; accord, *Optimal Markets, Inc. v. Salant, supra*, 221 Cal.App.4th at pp. 923-924.)

Accordingly, when a plaintiff "fail[s] to timely prosecute the arbitration," a defendant's "only avenue for redress" is in the arbitration proceeding.  (*Blake v. Ecker* (2001) 93 Cal.App.4th 728, 737 (*Blake*), disapproved on another ground in *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1107, fn. 5; see *Titan/Value, supra*, 29 Cal.App.4th at p. 488.)  "The trial court may not step into a case submitted to arbitration and tell the arbitrator what to do and when to do it: it may not resolve procedural questions, order discovery, determine the status of claims before the arbitrator or set the case for trial because of a party's alleged dilatory conduct.  It is for the arbitrator, and not the court, to resolve such questions."  (*Titan/Value*, at p. 489; accord, *Blake*, at p. 738; *Brock, supra*, 10 Cal.App.4th at p. 1808 [remedy for "dilatory tactics" in an arbitration is to "move in the arbitration proceedings to terminate them for failure to pursue the arbitration claim with reasonable diligence"]; see *Byerly v. Sale* (1988) 204 Cal.App.3d 1312, 1316 (*Byerly*) ["arbitration has a life of its own outside the judicial system, and only the arbitrator should determine whether there has been an unreasonable delay in prosecution which would justify dismissal"].)

Where, as here, the procedural facts are undisputed, the question whether the trial court exceeded its jurisdiction is a legal question subject to de novo review. (See *MKJA, Inc. v. 123 Fit Franchising, LLC* (2011) 191 Cal.App.4th 643, 657 [de novo review whether trial court had jurisdiction to lift litigation stay under section 1281.4 on the ground plaintiff could not afford costs of arbitration]; see also *Jack v. Ring LLC* (2023) 91 Cal.App.5th 1186, 1196 [de novo review whether trial court lacked jurisdiction to rule on reconsideration motion]; *People v. Bilbrey* (2018) 25 Cal.App.5th 764, 770 [de novo review whether trial court lacked jurisdiction to rule on Penal Code section 1382 motion to dismiss].)

B.    *The Trial Court Exceeded Its Jurisdiction in Dismissing the Claims Ordered to Arbitration*

The trial court exceeded its jurisdiction when it dismissed the Williams plaintiffs' claims against the Petrosian defendants for failure to prosecute, after compelling the claims to arbitration and staying the action against the Petrosian defendants. (*Blake, supra*, 93 Cal.App.4th at pp. 737-738; *Titan/Value, supra*, 29 Cal.App.4th at p. 487-489; *Byerly, supra*, 204 Cal.App.3d at p. 1316.)

*Blake* is directly on point. There, Diana Blake sued her employer for workplace harassment. Two months after the lawsuit was filed, the trial court compelled arbitration and stayed the action. (*Blake, supra*, 93 Cal.App.4th at pp. 734-735.) Two years later the employer moved to dismiss the complaint for failure to prosecute under the two-year discretionary dismissal statute (section 583.420), arguing

13

Blake's failure to commence arbitration prejudiced its defense of the case by making witnesses unavailable. (*Id.* at p. 735.) The trial court dismissed the case, and the Court of Appeal reversed, explaining that once the trial court granted the petition to compel arbitration and stayed the action, "[d]efendants' only avenue for redress when plaintiff failed to timely prosecute the arbitration was in the arbitration proceeding." (*Id.* at pp. 737-738.) Rather than seeking relief from the trial court, the employer "should have sought relief in the arbitration proceeding, by pursuing the remedies available under the arbitration agreement and the rules of the arbitration association designated therein." (*Id.* at p. 738 & fn. 8; see *Titan/Value, supra*, 29 Cal.App.4th at pp. 485-486 [trial court erred where, in response to plaintiffs' frustration with failure of arbitration to get "off the ground," the court issued a trial setting order that set deadlines for scheduling and completion of arbitration with trial date if arbitration was not timely completed].)

In their supplemental letter brief, the Petrosian defendants argue there is a split of authority on whether a trial court continues to have jurisdiction to enforce its own orders requiring that an arbitration proceed once it compels arbitration, contrasting *Preston v. Kaiser Foundation Hospitals* (1981) 126 Cal.App.3d 402, 407 (*Preston*) with *Brock, supra*, 10 Cal.App.4th 1790, and they urge us to recognize a trial court's authority to penalize dilatory plaintiffs. We agree with the reasoning in *Blake, Titan/Value,* and *Brock* and decline the invitation to adopt the reasoning in *Preston* and other pre-*Brock* cases holding that trial courts continue to have jurisdiction to dismiss cases for failure expeditiously to proceed to arbitration.

14

In *Preston*, the trial court dismissed a wrongful death action that had been stayed pending arbitration, as well as the related arbitration, under the mandatory five-year dismissal statute (former section 583; now section 583.360) because the parties failed to select a panel of arbitrators and five years had passed since the filing of the complaint. (*Preston, supra*, 126 Cal.App.3d at pp. 405-407.) In response to the plaintiffs' argument that the trial court lacked jurisdiction to dismiss the arbitration, the Court of Appeal held without further analysis, "We read . . . sections 1281.4 and 1292.6[12] in combination as investing a court, which has ordered a matter to be arbitrated, with the power on the one hand to entertain a petition by the plaintiff for judicial assistance in moving the arbitration forward where the matter is foundering for reasons beyond plaintiffs' control, or on the other hand, to entertain a motion by defendants to dismiss the arbitration where plaintiffs have failed to exercise reasonable diligence in moving the dispute to a conclusion." (*Id.* at p. 407.) However, the Court of Appeal reversed and remanded for the trial court to consider whether the plaintiffs had prosecuted their case with "reasonable diligence," consistent with a judicially-created condition precedent for dismissal under the five-year rule. (*Id.* at pp. 408-409.)

A decade later the Court of Appeal in *Brock, supra*, 10 Cal.App.4th at pages 1793 to 1794 held the trial court erred in dismissing a medical malpractice action and the related

---

12      Section 1292.6 provides that a court in which a petition or motion to compel arbitration has been filed "retains jurisdiction to determine any subsequent petition involving the same agreement to arbitrate and the same controversy, and any such subsequent petition shall be filed in the same proceeding."

15

arbitration proceedings under the mandatory five-year dismissal rule.  The court reasoned that because the lawsuit had been stayed pending arbitration, the time that had elapsed during the stay should have been excluded in calculating the five-year period, and thus, the five-year period had not expired.[13]  (*Id.* at pp. 1797, 1801.)  The court distinguished *Preston, supra,* 126 Cal.App.3d at page 406 on the basis that the court there did not consider the effect of the arbitration stay on accrual of the five-year dismissal period, and further, the court erroneously concluded the effect of the dismissal of the action was to terminate the arbitration.  (*Brock*, at pp. 1799-1800, 1805.)

In the three decades since *Brock* was decided no published cases have followed the principle enunciated in *Preston* and repudiated in *Brock* that a trial court may dismiss an action for failure to prosecute the arbitration regardless of the stay, and can terminate the arbitration.  And, as discussed, the Supreme Court in *Gaines* cited *Brock* approvingly in clarifying that once a trial court grants a petition to compel arbitration and stays the action, the trial court retains only vestigial jurisdiction over the matter to determine once the arbitration is concluded whether the action should be dismissed.  (*Gaines v. Fidelity National Title Ins. Co., supra*, 62 Cal.4th at pp. 1095-1096, citing *Brock, supra*, 10 Cal.App.4th at p. 1796.)

---

[13]     Here too, excluding the period during which the case was stayed pending arbitration (from July 2021 to March 2023), at the time of dismissal fewer than 15 months had passed since the filing the complaint (in April 2020).  Thus, the two-year mark for discretionary dismissal for failure to prosecute under section 583.420, subdivision (a)(2)(B), and California Rules of Court, rule 3.1340(a) had not yet passed.

16

The Petrosian defendants argue that if the trial court lacked authority to dismiss them, the Williams plaintiffs—who are pursuing three related lawsuits with overlapping claims against the Wells Fargo defendants who cannot be compelled to arbitration—will never commence the arbitration and instead will litigate against the other defendants, frustrating the order compelling arbitration of the central dispute. However, the Petrosian defendants have recourse within the arbitration process to prevent unreasonable or abusive delay. Contrary to the trial court's finding that the Petrosian defendants cannot initiate the arbitration "because they have no affirmative demands," the AAA Commercial Arbitration Rules (AAA rules or rule) expressly recognize that a defendant may initiate arbitration. (See AAA rule R-4(a)(ii-c) ["The party filing the [d]emand with the AAA is the claimant and the opposing party is the respondent regardless of which party initiated the court action."].)[14] Although the Petrosian defendants would need to pay a substantial filing fee,[15] they ultimately will not be unfairly

[14] On our own motion, we take judicial notice of the current version of the AAA rules (effective September 1, 2022) available on the AAA website: <https://adr.org/sites/default/files/CommercialRules.pdf (as of April 1, 2024). (Evid. Code, §§ 452, subd. (h), 459, subd. (a); see *Emerald Aero, LLC v. Kaplan* (2017) 9 Cal.App.5th 1125, 1132 [AAA rules are subject to judicial notice].)

[15] The AAA standard fee schedule sets the initial filing fee for claims exceeding $10 million at $11,000, plus a small percentage of the claimed amount above $10 million. (AAA Administrative Fee Schedule (Effective May 1, 2018) <https://www.adr.org/sites/default/files/Commercial_Arbitration_

saddled with the expense because payment of filing fees is an advancement "subject to final apportionment by the arbitrator in the award," (AAA rule R-55), and the parties' arbitration agreement further provides for the arbitrator to award the costs of the arbitration to the prevailing party.

Moreover, once the arbitration has commenced, the Petrosian defendants may request the arbitrator issue orders to control and expedite the proceeding (AAA rule R-24), and the arbitrator may issue sanctions for violations.[16] (See AAA rule R-60(a) ["The arbitrator may, upon a party's request, order appropriate sanctions where a party fails to comply with its obligations under these Rules or with an order of the arbitrator."].) Further, if the Williams plaintiffs refuse to participate in the arbitration, the arbitration may proceed in their absence. (AAA rule R-32.) The arbitrator also has discretion to dismiss the arbitration due to a party's failure to proceed with reasonable diligence. (See *Burgess v. Kaiser*

---

Fee_Schedule_1.pdf> [as of April 1, 2024].) This fee does not include the arbitrator's compensation or a final administrative fee.

[16] We note the parties' agreements do not specify how the arbitrator should be selected. However, rule R-13 of the AAA rules provides a mechanism for expeditiously appointing an arbitrator if the parties have not appointed one or have not agreed to any other method of appointment. Further, under section 1281.6, if the AAA fails to appoint an arbitrator or the arbitrator "fails to act," the court may, on petition of a party, appoint an arbitrator. (See (*Titan/Value, supra*, 29 Cal.App.4th 487 [vestigial jurisdiction includes power to appoint an arbitrator under section 1281.6]; *SWAB, supra*, 150 Cal.App.4th at p. 1200 [same].)

18

*Foundation Hospitals* (1993) 16 Cal.App.4th 1077, 1081-1082 [trial court erred in denying plaintiffs' petition to vacate arbitrator's dismissal of arbitration due to failure to prosecute where delay was caused by difficulty in selecting an arbitrator and arbitrator's unreasonable demand for a reservation fee]; *Brock, supra,* 10 Cal.App.4th at p. 1808 ["'only the arbitrator should determine whether there has been an unreasonable delay in prosecution which would justify dismissal'"].)

On appeal, the Williams plaintiffs maintain they have not commenced arbitration because they do not have sufficient funds to pay the AAA fees. But the Williams plaintiffs never submitted documentation to show they did not have the ability to pay. And if they could make that showing, they should have raised their inability to pay in opposition to the Petrosian defendants' motion to compel arbitration; if the court found a substantial hardship rendering the arbitration agreement unconscionable, it could have required the Petrosian defendants to pay the fees or waive arbitration. (*Roldan v. Callahan & Blaine* (2013) 219 Cal.App.4th 87, 96 ["[I]f the court determines that any plaintiff is unable to [pay for the arbitration], it must issue an order specifying that [the defendant] has the option of either paying that plaintiff's share of the arbitration cost or waiving its right to arbitrate that plaintiff's case and allowing the case to proceed in court."].)[17]

_____

[17] Other appellate courts have agreed with *Roldan* that a trial court has jurisdiction to lift the stay under section 1281.4 to allow a party to an arbitration agreement to request a waiver or reallocation of arbitration costs where the party is unable to pay the costs and otherwise would have no access to a forum to

19

Moreover, the Williams plaintiffs could have asserted their inability to pay in the arbitration. As discussed, the arbitrator has the discretion to allocate administrative fees between the parties, and the AAA may also defer or reduce fees in cases of "extreme hardship." (AAA rule R-55.) Further, if the arbitrator denied the Williams plaintiffs' request for relief and terminated the arbitration for failure to pay the fees, the case would be returned to the superior court, which would have the power to lift the stay and make further orders on how to

resolve the party's claims. (See *Aronow v. Superior Court* (2022) 76 Cal.App.5th 865, 885 [trial court had jurisdiction to address plaintiff's request to lift arbitration stay to conduct discovery into his financial hardship, and "if he demonstrates financial inability to pay the anticipated arbitration costs, to require [defendant] either to pay [his] share of the arbitrator's fee or to waive the right to arbitration"]; *Weiler v. Marcus & Millichap Real Estate Investment Services, Inc.* (2018) 22 Cal.App.5th 970, 232 [plaintiff could request relief under *Roldan* from superior court (to require defendant to pay for arbitration or waive right to arbitrate) after matter was compelled to arbitration where plaintiff suffered drastic change in her financial circumstances that made arbitration unaffordable]; but see *MKJA, Inc. v. 123 Fit Franchising, LLC, supra*, 191 Cal.App.4th at p. 661 [trial court does not have jurisdiction to lift the stay where party cannot afford arbitration costs because "lifting a stay of litigation based merely upon a determination that a party cannot afford the costs associated with arbitration would directly and materially impede the arbitrator's jurisdiction"].) Because the Williams plaintiffs did not present evidence showing they could not afford the arbitration costs, we do not reach whether they could have petitioned the trial court for relief after the matter was compelled to arbitration.

proceed. (See AAA rule R-59(f) ["[If] the parties have failed to make the full payments requested within the time provided after the suspension, the arbitrator, or the AAA if an arbitrator has not been appointed, may terminate the proceedings."]; *Cinel v. Christopher* (2012) 203 Cal.App.4th 759, 767-769 [where the arbitrator dismissed an arbitration due to defendants' nonpayment of fees, trial court properly denied defendants' motion to confirm the dismissal because it was not an "award" under section 1283.4, and the court acted within its jurisdiction in lifting the stay and setting the matter for trial]; cf. *Burgess v. Kaiser Foundation Hospitals, supra*, 16 Cal.App.4th at pp. 1081-1082 [plaintiffs could file petition to vacate arbitrator's dismissal of arbitration (as an award) due to failure to prosecute]; *Brock, supra,* 10 Cal.App.4th at p. 1808 [if arbitrator concludes that claimants have failed to proceed with reasonable diligence, "the arbitrator may order that claimants take nothing on their claims by reason of their dilatory prosecution," which trial court may confirm as "'functional equivalent of an award against the claimants'"].)[18]

---

[18]     We note that in *Cinel v. Christopher, supra*, 203 Cal.App.4th at pages 763-764, the two defendants that had moved to compel arbitration failed to pay the fees, leading to dismissal of the arbitration; one of the two defendants then filed a petition in the trial court to confirm the award (the arbitrator's dismissal) and dismiss the complaint. If the arbitrator in this case were to dismiss the arbitration because the Williams plaintiffs failed to pay the arbitration fees after a finding they had the ability to pay, this case would be in a different posture from *Cinel*. The trial court would still have jurisdiction to lift the

21

Likewise, if the arbitrator ordered the Petrosian defendants to advance the fees, and they refused, the arbitrator could terminate the arbitration, returning the matter to the jurisdiction of the trial court.[19]  (See *Cinel*, at p. 768.)

---

stay, but it could decide that setting the case for trial under those circumstances would unfairly allow the Williams plaintiffs to avoid arbitration.  We take no position on what action the trial court should take if the arbitrator dismisses the arbitration for failure to pay the arbitration fees and returns the matter to the trial court.

[19]     The Petrosian defendants contend this appeal should be dismissed under the disentitlement doctrine because the Williams plaintiffs "engineered" appealability of the order compelling arbitration by "refusing to prosecute their claims in arbitration leading to a dismissal judgment they now appeal." (See *Gastelum v. Remax Internat., Inc.* (2016) 244 Cal.App.4th 1016, 1023 ["An order granting a motion to compel arbitration is not appealable under California law."].)  Because we reverse the order of dismissal, we do not reach the merits of the order compelling arbitration.  Moreover, our holding that the trial court lacks jurisdiction to dismiss a claim pending in arbitration for failure to prosecute prevents a plaintiff from manufacturing an interlocutory appeal from an order compelling arbitration.

## DISPOSITION

The order of dismissal is reversed.  The parties are to bear their own costs on appeal.


FEUER, J.

We concur:



SEGAL, Acting P. J.



RAPHAEL, J.*

---

*        Judge of the San Bernardino County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.