Filed 2/3/25

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JUSTO MALO SANCHEZ,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF<br>ORANGE COUNTY,<br><br>    Respondent;<br><br>CONSUMER DEFENSE LEGAL<br>GROUP, et al.,<br><br>    Real Parties in Interest. | G064490<br><br>(Case No. 30-2023-01343374)<br><br>O P I N I O N |

ORIGINAL PROCEEDING in mandate; Andre De La Cruz, Judge. Petition granted.

Law Offices of George E. Omoko and George E. Omoko for Petitioner.

No appearance for Respondent.

Thaler Law and Jesse J. Thaler, for Real Parties in Interest.

After Justo Malo Sanchez filed a legal malpractice complaint against Real Parties in Interest Consumer Defense Law Group (CDLG), Tony Cara, Peter Nisson, and Nonprofit Alliance of Consumer Advocates (Nonprofit Alliance) (collectively Defendants), Defendants moved to compel arbitration of the lawsuit. The superior court tentatively denied the motion, before changing its mind and granting the motion. Sanchez filed a petition for extraordinary relief from the court's order granting Defendants' motion to compel arbitration. He contends the arbitration agreement is procedurally and substantively unconscionable, as it is an adhesive contract and he cannot afford the arbitration fees and costs. We conclude relief is warranted and grant the writ.

PROCEDURAL HISTORY

I.

COMPLAINT

On August 17, 2023, Sanchez filed a complaint against Defendants, alleging causes of action for breach of fiduciary duty, aiding and abetting, fraud and deceit, legal malpractice, and aiding and abetting legal malpractice. The complaint alleged Sanchez owned a home in Bakersfield that went into foreclosure. Sanchez subsequently was contacted by someone from Nonprofit Alliance, who stated the property could be saved by a Nonprofit Alliance referred attorney. Sanchez and his wife drove to Costa Mesa to meet with attorney Cara of CDLG, the attorney to which Nonprofit Alliance referred him. However, they did not meet with Cara, Nisson, or any other CDLG attorney. Instead, Alfredo from Nonprofit Alliance gave them a retainer agreement that Sanchez signed. The retainer agreement was wholly in English, and neither Sanchez nor his wife speak or write in English. No one went over the retainer agreement with Sanchez or translated the

2

contents of the agreement to Spanish. The complaint alleged Cara, Nisson, and CDLG subsequently committed legal malpractice during their representation of Sanchez, resulting in terminating sanctions and the loss of his house.

Sanchez acknowledged the retainer agreement contained an arbitration agreement. He argued the arbitration agreement was unenforceable because it was procedurally and substantively unconscionable. It was procedurally unconscionable because it was an adhesive contract and Sanchez was, and is, illiterate in English. It was substantively unconscionable because Sanchez, an indigent party who qualified for a court filing fee waiver, could not afford the $2,000 filing fee for arbitration with the Judicial Arbitration and Mediation Service (JAMS), and Defendants did not respond to Sanchez's request to pay arbitral fees and costs.

II.

MOTION TO COMPEL ARBITRATION

*A. Defendants' Motion to Compel Arbitration*

On January 31, 2024, Defendants jointly moved to compel arbitration and stay the court proceedings. They argued the claims are subject to arbitration, pursuant to the arbitration clause in the retainer agreement. Defendants asserted, without further analysis, that they all have standing to compel arbitration because they are all either the signatory or third party beneficiaries of the arbitration agreement. They argue the arbitration agreement is not unconscionable because: (1) the failure to read an agreement that one accepts or signs does not invalidate an agreement; (2) Sanchez was previously denied a fee waiver twice; and (3) the arbitration clause applies equally to both sides.

3

The motion attached the six-page retainer agreement. On page five of the agreement, there is an arbitration clause, which provides: "10. VENUE AND ARBITRATION. This Agreement has been made and entered into in the State of California, and the services described herein will be performed within the State of California. Any dispute between Client and CDLG will be resolved in accordance with the laws of the State of California. Any dispute arising from this Agreement, without limitation, will be settled by binding arbitration. This includes any claim against CDLG for breach of contract, negligence, and breach of fiduciary duty or other wrongdoing. The arbitration shall be conducted before and pursuant to the rules of JAMS, Judicate West, or equivalent provider. The arbitrator shall be a retired judge or an attorney selected by or pursuant to the rules of such provider. The arbitration hearing shall be conducted pursuant to the California Rules of Evidence and shall occur in Orange County, California. Each party shall have the right to conduct reasonable discovery prior to the arbitration hearing." (Boldface omitted.)

The retainer agreement was signed by Sanchez and Cara, as CEO of CDLG, on behalf of CDLG. Peter Nisson, was listed as an associate underneath the signature block, but Nisson did not sign or initial the agreement.

In a supporting declaration, Cara stated he is the Chief Executive Officer (CEO) of CDLG. He asserted, based on personal knowledge, that Sanchez and CDLG entered into a retainer agreement on July 30, 2021. The retainer agreement contained an arbitration clause, and all legal work done on behalf of Sanchez was done pursuant to the retainer agreement.

4

## B. *Opposition to Motion to Compel Arbitration*

Sanchez opposed the motion to compel arbitration. First, he contended there was a lack of mutual assent to arbitration, arguing no one discussed the arbitration provision with him. Sanchez also contended Cara lacked personal knowledge about the retainer agreement or arbitration clause, as neither Cara nor any other CDLG attorney met or spoke with him.

Second, Sanchez argued, even if there was an arbitration agreement, the agreement was unenforceable because it is permeated with procedural and substantive unconscionability. Factors demonstrating procedural unconscionability include: Alfredo from Nonprofit Alliance presented the pre-printed agreement on a "take it or leave it" basis; Alfredo never explained the agreement; the arbitration clause was not translated into Spanish, presented in the same font and type as other provisions, and did not reference or explain how to access the rules of JAMS, Judicate West, or other providers; Sanchez had only a sixth-grade education in Mexico, speaks limited English and is illiterate in English; and Alfredo did not advise Sanchez, a layperson, to have an attorney review the arbitration agreement and no attorney reviewed the agreement.

As to substantive unconscionability, Sanchez argued he "is now on fee waiver, which is an indication that he can[not] pay court fees, which are modest compared to arbitration costs." (Boldface omitted.) Sanchez's counsel averred that he contacted JAMS, and was informed JAMS would not waive the $2,000 filing fee for attorney-client disputes, and additional arbitration costs would be in the ballpark of $25,000 to $30,000.

Sanchez submitted a declaration confirming his education level, his lack of English proficiency, his communications with Alfredo, his lack of

5

contact with Cara and other CDLG attorneys, and his surprise about the arbitration agreement.

In reply, Defendants summarily reasserted all moving parties are the signatory or third-party beneficiaries. They also argued the arbitration agreement is not unconscionable. They noted Sanchez "seemingly argues he is indigent and he does not read English. However, [Sanchez] is not indigent, as he is the former owner of residential real property . . . and was denied a fee waiver twice." Moreover, a party's limited ability to read the language of a contract is insufficient to invalidate an agreement.

C. *Tentative Ruling*

Before the hearing on the motion to compel arbitration, the trial court issued a tentative ruling denying the motion. The court tentatively found Defendants had not met their burden of proof to show the existence of an agreement to arbitrate by a preponderance of the evidence because the agreement was attached to the declaration of Cara, who lacks personal knowledge of any aspect of the circumstances surrounding the agreement, including its execution. The court also determined that aside from CDLG, the other Defendants failed to show they have standing to enforce the agreement as third party beneficiaries.

The court tentatively found that, even assuming the existence of a validly-executed arbitration agreement, the arbitration clause was unconscionable. The court concluded there was "a substantial level of procedural unconscionability as the circumstances of the formation of the contract created oppression and surprise. [Sanchez] has minimal understanding of the English language; has no fluency in speaking, reading or writing the English language; has no education in the United States with his highest education being the equivalent of 6th grade in Mexico; has no

6

experience with arbitration provisions; and was presented with an adhesive 6-page preprinted agreement that was written only in English and contained an arbitration provision that was hidden on page 5 of a 6-page agreement with nothing to highlight its import." Additionally, the arbitration provision references various rules, including that of JAMS, Judicate West, "'or equivalent provider,' and fails to attach the rules of any of these providers. Further, the evidence submitted tends to indicate pressure on [Sanchez] to sign the retainer agreement as [his] property was in foreclosure, and [he] and his wife had driven from Bakersfield to Costa Mesa to meet with [the CDLG attorneys] . . . [and Sanchez] did not have the aid of any attorney in reviewing the agreement."

As to substantive unconscionability, the "evidence shows that [Sanchez] is indigent, and had attempted to commence JAMS arbitration, but that the fees and costs associated with that arbitration would be unaffordable or would have a substantial deterrent effect on [Sanchez]'s decision to seek relief. . . [Sanchez's] counsel also . . . gave Defendant's [*sic*] counsel the option to pay for the arbitration in JAMS or waive arbitration and allow [Sanchez] to proceed in this Court where [Sanchez] is eligible for a fee waiver, but that Defendants' counsel failed to respond. Under these circumstances, consigning [Sanchez] to costly arbitration that he cannot afford and that would effectively negate the purposes and benefit of in *forma pauperis* status renders the arbitration provision substantively unconscionable."

D.  *Ruling on Motion and Request for Clarification*

After the hearing on the motion to compel arbitration, on May 20, 2024, the trial court issued a minute order "modif[ying] the tentative ruling," and granting the motion to compel arbitration. It ordered Defendants' counsel to prepare and submit a proposed order and give notice.

On June 3, 2024, Sanchez filed a request for clarification of the court's decision to abandon the tentative ruling and immediately grant the motion to compel arbitration following defense counsel's argument that "it was impossible for [Sanchez] to claim that he had no money to pay for arbitration when [Sanchez] was a former homeowner whereas [defense counsel] himself an attorney did not have money to buy a house. [Defense counsel] also stated without basis that [Sanchez] had paid his client attorney's fees to represent him in the underlying lawsuit in the amount of $15,000." Sanchez noted the court had ordered Defendants' counsel to prepare the proposed order and give notice, but counsel had not filed any notice of the ruling.

The same day, Defendants opposed the request for clarification on several grounds. They first objected to Sanchez's counsel "attempting to create any type of record concerning the full and complete contents of the arguments at hearing. If [Sanchez]'s counsel wanted a record of the contents of the argument at hearing, he should have retained a court reporter." "[W]ithout trying to create any type of record concerning the full and complete contents of the arguments at [the] hearing," Defendants then clarified that defense counsel did not argue he had no money to buy a house. Rather, counsel stated Sanchez "was a prior owner in Southern California as alleged in the pleadings, while [defense counsel] was not currently a property owner in Southern California." Additionally, defense counsel did not argue without basis Sanchez had paid $15,000 in attorney fees. Rather, he stated that "pursuant to the contract entered into between the parties as set forth in the pleadings, [Sanchez] paid attorney's fees to represent [Sanchez] in the underlying lawsuit that exceeded $15,000."

8

Defendants' counsel also filed a Notice of Ruling, attaching the minute order summarily granting the motion to compel arbitration.

E. *Order Granting Motion to Compel Arbitration and Writ Petition*

The superior court did not respond directly to the request for clarification. On July 2, 2024, the superior court entered an order granting the motion to compel arbitration. The order stated the ruling was based on the pleadings filed in connection with the motion, the court's records and files in this action, and "such further evidence and argument that was presented at the hearing."

Subsequently, Sanchez filed a petition for writ relief. He requested a writ of mandate directing the superior court to vacate its July 2, 2024 order granting Defendants' motion to compel arbitration and to enter an order denying the motion to compel arbitration.

Sanchez's counsel also submitted a verified statement explaining the lack of a reporter's transcript of the hearing on the motion to compel arbitration. He explained there was no court reporter because Sanchez "was on fee waiver which did not cover court reporter services, and could not afford to pay out of pocket for a court reporter. Additionally, [the superior court] had issued a tentative ruling in advance of the [hearing] that left no doubt that the motion to compel arbitration was denied, which obviated the necessity of a court reporter."

## DISCUSSION

Sanchez's petition seeks relief from the superior court's order compelling arbitration based on his inability to pay the arbitration filing fee and costs. A party's inability to pay arbitral fees and costs can preclude enforceability of an arbitration agreement because the high fees and costs would render the agreement unconscionable. (See *Gutierrez v. Autowest, Inc.*

9

(2003) 114 Cal.App.4th 77, 90 (*Gutierrez*) ["[I]t is substantively unconscionable to require a consumer to give up the right to utilize the judicial system, while imposing arbitral forum fees that are prohibitively high"].) The high arbitral fees and costs also can provide a basis for relief from an arbitration that has been ordered. If a party is unable to pay the fees and costs, the other party "can elect to either pay that [party's] share of the arbitration cost and remain in arbitration or waive its right to arbitrate that [party's] claim." (*Roldan v. Callahan & Blaine* (2013) 219 Cal.App.4th 87, 96 (*Roldan*).) A party seeking relief on either ground may proceed via writ. (See *Zembsch v. Superior Court* (2006) 146 Cal.App.4th 153, 160 ["writ review of orders compelling arbitration is proper . . . if the arbitration would appear to be unduly time consuming or expensive"]; accord, *Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1567 (*Parada*) ["In this case, the high cost of arbitrating before a three-judge panel at JAMS and the amount of time necessary to complete arbitration justify reviewing the order compelling arbitration by writ of mandate"].) As explained below, whether examined under the defense of unconscionability or under *Roldan*, Sanchez is entitled to relief from the superior court's order compelling arbitration.

## I.

### UNCONSCIONABILITY

A.  *Applicable Law*

"A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." (Code Civ. Proc., § 1281.) One such ground for revocation of a contract is unconscionability. Under Civil Code section 1670.5, subdivision

10

(a)[1], "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

"The general principles of unconscionability are well established. A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*OTO*).) The unconscionability doctrine thus has a procedural element and a substantive element. (*Ibid*.) "The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citations.] Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246 (*Pinnacle*).)

"The party resisting arbitration bears the burden of proving unconscionability. [Citations.] Both procedural unconscionability and substantive unconscionability must be shown, but 'they need not be present in the same degree' and are evaluated on "'a sliding scale.'"" (*Pinnacle, supra*, 55 Cal.4th at p. 247, quoting *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114.) "'[T]he more substantively oppressive the contract term, the less evidence of procedural

---

[1] All further statutory references shall be to the Civil Code unless otherwise stated.

11

unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' [Citation.]" (*Pinnacle*, at p. 247.) Where procedural unconscionability is "substantial," "even a relatively low degree of substantive unconscionability may suffice to render the agreement unenforceable." (*OTO, supra*, 8 Cal.5th at p. 130.)

"Although the trial court made no express findings, we will infer the trial court made every implied finding necessary to support the order compelling arbitration, and review those implied findings for substantial evidence." (*Parada, supra*, 176 Cal.App.4th at p. 1567.) "Whether an arbitration provision is unconscionable is ultimately a question of law. " (*Higgins v. Superior Court* (2006) 140 Cal.App.4th 1238, 1250.)

B. *Analysis*

Here, there is substantial procedural unconscionability. The arbitration agreement is a contract of adhesion, viz., "'a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'" (See *Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 817, quoting *Neal v. State Farm Ins. Cos.* (1961) 188 Cal.App.2d 690, 694.) "[T]he adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability." (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 915.)

Likewise, the "circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required." (*OTO, supra*, 8 Cal.5th at p. 126.) "'The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length

12

of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.' [Citation.]" (*OTO*, pp. 126-127.) As established by Sanchez's declaration, the evidence shows Sanchez was presented with the pre-printed retainer agreement containing the arbitration agreement on a "take it or leave it basis"; he was in danger of losing his home and had driven from Bakersfield to Costa Mesa to meet with an attorney for help; he has a 6th-grade education in Mexico, no education in the United States and very limited English language skills; and he was not advised to seek an attorney to review the agreement, nor provided the time to have an attorney review the document. In sum, there was a substantial amount of oppression.

Similarly, the evidence shows unfair surprise. "Procedural surprise focuses on whether the challenged term is hidden in a prolix printed form or is otherwise beyond the reasonable expectation of the weaker party." (*Morris v. Redwood Empire Bancorp* (2005) 128 Cal.App.4th 1305, 1321.) Sanchez has limited English skills, but the arbitration agreement was wholly in English, and no one provided a translation or explanation in Spanish. He also was not given time to review the agreement before signing it. (See *Penilla v. Westmont Corp.* (2016) 3 Cal.App.5th 205, 216 (*Penilla*) [finding procedural unconscionability where arbitration provision in rental agreements not explained or translated to non-English-proficient tenants and tenants lacked sufficient time to review agreements]; *Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 85 [finding procedural unconscionability where arbitration agreement was not translated into Spanish for employees who could not read English, and one employee had

only a few minutes to review and sign the multi-page employment agreement].)

The failure to provide a Spanish translation also would presumptively establish a violation of Civil Code section 1632, which would demonstrate procedural surprise. Section 1632 generally provides that, when a contract for legal services is negotiated primarily in Spanish, a Spanish translation must be provided. Otherwise, the retainer agreement is subject to rescission.[2] The statutory scheme thus creates an expectation that, when negotiating a retainer agreement with a prospective client in Spanish, the client would be provided with a Spanish translation of the negotiated agreement. (See, e.g., *Lopez v. Asbury Fresno Imports, LLC* (2015) 234 Cal.App.4th 71, 77 ["Section 1632 contemplates a situation in which both parties are using the foreign language in negotiating the transaction. In that situation, the statute prevents the seller from suddenly springing on the buyer a contract written in English and expecting the buyer to sign it without reviewing its terms"].) Based on Sanchez's declaration, that reasonable expectation was not met here because Sanchez was provided with only a

_____

[2] Section 1632 provides: "A person engaged in a trade or business who negotiates primarily in Spanish, . . . orally or in writing, in the course of entering into any of the following, shall deliver to the other party to the contract or agreement, and any other person who will be signing the contract or agreement, and before the execution thereof, a translation of the contract or agreement in the language in which the contract or agreement was negotiated, that includes a translation of every term and condition in that contract or agreement: . . . (6) A contract or agreement, containing a statement of fees or charges, entered into for the purpose of obtaining legal services, when the person who is engaged in business is currently licensed to practice law . . . ." (Civ. Code, § 1632, subd. (b).) "Upon a failure to comply with the provisions of this section, the person aggrieved may rescind the contract or agreement in the manner provided by this chapter." (*Id.*, § 1632, subd. (k).)

14

contract written in English. Accordingly, a reasonable person in Sanchez's position would be surprised not to receive a Spanish translation of the retainer agreement.

Further, the contract purported to have the parties agree to the arbitration rules as promulgated by "JAMS, Judicate West, or equivalent." This language made it virtually impossible for Sanchez to knowingly agree to the rules, as he would not only have had to research the two named arbitration providers' respective rules, but he would have to guess which additional unnamed providers were deemed "equivalent" in the drafter's mind and research them as well. No reasonable consumer, much less a non-attorney, non-English speaker, could have made this determination with any degree of certainty prior to signing the agreement, given the limited information provided. (See *Murrey v. Superior Court* (2023) 87 Cal.App.5th 1223, 1241-1242 [failure to provide specific rules or name of specific arbitrator or arbitrator selection process from pool of multiple arbitrators with different respective rules is procedurally unconscionable].)

Additionally, Sanchez would have been surprised by the high arbitral fees and costs, as they are not stated in the document or easily available. (See *Penilla*, *supra*, 3 Cal.App.5th at p. 217 ["We take judicial notice that the JAMS Web site does not list the fee schedules for neutrals"].) "While arbitration may be within the reasonable expectations of consumers, a process that builds prohibitively expensive fees into the arbitration process is not." (*Gutierrez*, *supra*, 114 Cal.App.4th at p. 90.) In sum, the record supports a finding of substantial procedural unconscionability. Any implied finding otherwise is not supported by substantial evidence.

Turning to substantive unconscionability, as noted, "it is substantively unconscionable to require a consumer to give up the right to

15

utilize the judicial system, while imposing arbitral forum fees that are prohibitively high." (*Gutierrez, supra*, 114 Cal.App.4th at p. 90.) In *Gutierrez*, the court held that "a mandatory arbitration agreement is substantively unconscionable if it requires the payment of unaffordable fees to initiate the process." (*Id.* at p. 98.) That is the case here. As set forth in the declaration of Sanchez's counsel, counsel commenced arbitration with JAMS before being informed there was a $2,000 filing fee and JAMS would not offer a fee waiver for attorney-client disputes. Sanchez is indigent and has been granted a waiver of court filing fee of $435. That he is a prior homeowner and may have paid Cara $15,000 does not undermine his indigent status. The home was in foreclosure at the time Sanchez signed the arbitration agreement, indicating he lacked the income to make his mortgage payments. Sanchez's payment to Cara supports his inability to pay additional fees and costs for arbitration. The record thus shows Sanchez cannot afford the arbitral fees, which effectively would deprive him of any forum to litigate the claims against Defendants. The facts indicate there is some degree of substantive unconscionability, and any implied finding otherwise is not supported by substantial evidence. We need not determine the exact degree of unconscionability because in light of the high degree of procedural unconscionability, even a low degree of substantive unconscionability is sufficient to render the arbitration agreement unenforceable. (See *OTO, supra*, 8 Cal.5th at p. 130 ["We hold that, given the substantial procedural unconscionability here, even a relatively low degree of substantive unconscionability may suffice to render the agreement unenforceable"].) Accordingly, Sanchez is entitled to writ relief because the arbitration agreement is unenforceable for unconscionability.

16

## II

## *ROLDAN*

Alternatively, Sanchez is entitled to writ relief under *Roldan*, *supra*, 219 Cal.App.4th 87, and its progeny. In *Roldan*, four elderly plaintiffs of limited means sued the attorneys who had represented them in a toxic mold contamination litigation for, among other claims, breach of fiduciary duty. The defendant attorneys filed petitions to compel arbitration based on the arbitration provision contained in the plaintiffs' retainer agreements, which the trial court granted. (*Id.* at p. 92.) Plaintiffs then moved for an order "decreeing they [were] not required to pay any portion of the 'up front' cost of the arbitration" on the grounds they were indisputably indigent and had been each declared to be acting in forma pauperis by the trial court since the petition to compel arbitration was granted. (*Id.* at pp. 92-93.)

Another panel of this court reversed the order denying the plaintiffs' motion regarding arbitration costs. (*Roldan*, *supra*, 219 Cal.App.4th at p. 96.) The *Roldan* court concluded that plaintiffs could be excused from paying the fees associated with arbitration based on "California's long-standing public policy of ensuring that all litigants have access to the justice system for resolution of their grievances, without regard to their financial means." (*Id.* at p. 94.) As the court explained: "If, as plaintiffs contend, they lack the means to share the cost of the arbitration, to rule otherwise might effectively deprive them of access to any forum for resolution of their claims against [the defendant law firm]. We will not do that. Of course, as the trial court recognized, we cannot order the arbitration forum to *waive its fees*, as a court would do in the case of an indigent litigant. Nor do we have authority to order [the defendant law firm] to pay plaintiffs' share of those fees. What we can do, however, is give [the defendant law firm]

17

a choice: if the trial court determines that any of these plaintiffs is unable to share in the cost of the arbitration, [it] can elect to either pay that plaintiff's share of the arbitration cost and remain in arbitration or waive its right to arbitrate that plaintiff's claim." (*Id.* at p. 96.)

The California Supreme Court cited *Roldan* with approval in *Jameson v. Desta* (2018) 5 Cal.5th 594. The high court stated *Roldan* was an example of a decision showing "under California law when a litigant in a judicial proceeding has qualified for in forma pauperis status, a court may not consign the indigent litigant to a costly private alternative procedure that the litigant cannot afford and that effectively negates the purpose and benefit of in forma pauperis status." (*Desta,* at p. 622.)

In *Weiler v. Marcus & Millichap Real Estate Investment Services, Inc.* (2018) 22 Cal.App.5th 970, another panel of this court expanded *Roldan* to parties already in arbitration who suffer financial distress during the arbitral process. The *Weiler* court stated: ""[W]hen a party who has engaged in arbitration in good faith is unable to afford to continue in such a forum, that party may seek relief from the superior court. If sufficient evidence is presented on these issues, and the court concludes the party's financial status is not a result of the party's intentional attempt to avoid arbitration, the court may issue an order specifying: (1) the arbitration shall continue so long as the other party to the arbitration agrees to pay, or the arbitrator orders it to pay, all fees and costs of the arbitration; and (2) if neither of those occur, the arbitration shall be deemed 'had' and the case may proceed in the superior court." (*Weiler,* at p. 978, fn. omitted.)

In summary, under *Roldan*, a party may be relieved from an order compelling arbitration due to the party's inability to afford to initiate or continue arbitration proceedings. This relief is distinct from a finding that an

18

arbitration agreement is unenforceable as a result of, among other grounds, unconscionability. Thus, even if Sanchez cannot prove he could not afford to pay arbitral fees and costs at the time he signed the arbitration agreement, a present inability to pay arbitral fees and costs is sufficient to warrant writ relief.

Here, the undisputed facts show Sanchez currently cannot pay court filing fees of $435. No evidence suggests he can pay the much higher $2,000 arbitration filing fees or the $25,000 to $30,000 arbitration costs. Defendants presented no evidence disputing Sanchez's present inability to pay the arbitral fees and costs. Rather, they argued Sanchez was not indigent based on his *prior* homeownership and his *prior* payment to Cara. He no longer owns a home and no evidence suggests the attorney fees he paid to Cara have been returned. It is also undisputed that Defendants were asked and declined to pay Sanchez's share of the arbitral fees and costs. Thus, under *Roldan*, they have waived their right to arbitration. Accordingly, the superior court should have denied Defendants' motion to compel arbitration.

DISPOSITION

The petition is granted. The superior court is directed to vacate its order granting Defendants' motion to compel arbitration and to enter an order denying the motion to compel arbitration for the reasons set forth in this opinion. The stay previously issued by this court will dissolve upon issuance of the remittitur.  (Cal. Rules of Court, rules 8.490(d), 8.272.) Petitioner shall recover his costs on appeal.


DELANEY, J.


WE CONCUR:


SANCHEZ, ACTING P.J.


MOTOIKE, J.